ODOM, Justice.
 

 The defendant owns 172 acres of land in one tract, the southern edge of which is adjacent to the northern corporate limits of the City of Shreveport. The Louisiana Highway Commission brought this suit to acquire by expropriation a strip of this land, running diagonally across the tract, as a right-of-way for a state highway, which is to have two paved traffic lanes, each about 20 feet wide. The strip of land required is 4,434 feet long, is 190 feet wide at the south end, and 300 feet wide at the north end where it leaves defendant’s property. The right-of-way as surveyed takes 21.11 acres and severs defendant’s property into two tracts of almost equal area.
 

 From a point where the right-of-way enters defendant’s property near the city limits, the highway will be built on an embankment or dump about 10 feet high for a distance of 3534 feet, and the remaining, or north, 900 feet will be constructed through a cut averaging a depth of about 8 feet:
 

 The Highway Commission prayed that a jury of freeholders be impanelled to assess the value of the land to be taken and to fix the amount of damage, if any, which defendant might suffer as a result of the taking.
 

 Defendant in her answer alleged that the land to be taken was worth $250 per acre, or $5,277.50 for the 21.11 acres, and that the damage to the remaining land resulting from its being severed into two tracts would be $3,722.50.
 

 Other items of damage were claimed by defendant in her answer, but the Highway Commission agreed to compensate her for some of' them, and others have been abandoned ; so that now the only items of com
 
 *947
 
 pensation involved are the value of the land to be taken and the item of damage, if any, to the remaining property.
 

 The jury of freeholders assessed the value of the land at $100 an acre and rendered a verdict in favor of defendant for '$2,111, and rejected defendant’s claim for damages.
 

 Based upon this verdict, the court rendered judgment adjudicating the 21.11 acres of land to the Highway Commission, the adjudication to become effective upon its payment to the defendant of $2,111.
 

 The defendant appealed. She is asking that the verdict of the jury as to the value of the land be amended by increasing the acreage value from $100 to $250, and that the verdict rejecting her demand for damages be reversed and that she be awarded $3,722.50 for that item. The Highway Commission is satisfied with the verdict and the judgment, and is asking that they be affirmed.
 

 The right of the Highway Commis'sion to expropriate the land is conceded by defendant. Counsel for the Highway Commission concede that defendant is entitled to re-:over as compensation for the land taken its actual, true value before the contemplated improvement was proposed, as well as damages to the remaining property resulting from the taking. The defendant is claiming that, and nothing more. Therefore, the controversy revolves around the questions (1) whether the jury’s award for the value of the land is adequate; (2) whether defendant’s remaining property will be damaged as a result of building the highway diagonally across the entire 172-acre tract, and, if so, the amount of the-damage, and (3) whether the amount of the damage may be offset by the special benefits, if any, which defendant may derive from the building of the road.
 

 To prove the value of the land, the Highway Commission called and examined seven witnesses, six of whom testified that the land was worth $100 per acre and the other that it was worth $75 per acre. For the same purpose, the defendant called and examined five witnesses, four of whom stated that in his opinion the land was worth at least $250 per acre and the fifth that it was worth $200 per acre.
 

 Thus it seems that the members of the jury adopted the valuation placed on the land by plaintiff’s witnesses and disregarded entirely the opinions of the defendant’s witnesses as to its value. Counsel for the Highway Commission invoke the rule which this court has repeatedly recognized, that in expropriation proceedings verdicts of juries composed of freeholders of the parish as to the value of the property sought to be taken are entitled to great respect and should not be disturbed unless manifestly erroneous.
 

 Jurors are supposed to possess some personal knowledge of property values and are clothed to some extent with the character and authority of experts. City of New Orleans v. Atkinson, 180 La. 992, 158 So. 363; Housing Authority v. Polmer, 195 La. 608, 197 So. 247. In each of these cases we cited and reviewed many of our former opinions.
 

 
 *949
 
 But in City of Shreveport v. Herndon, 173 La. 144, 136 So. 297, 299, we said:
 

 “But they [the jurors] are not authorized to fix the value solely according to their own private opinion, even when they themselves inspect the property. On the contrary, it is their sworn duty to consider and give weight to all the testimony, if not discredited.”
 

 In support of our ruling in that case we cited and reviewed the previous jurisprudence on the subject and quoted the following extract from the opinion in the case of City of Shreveport v. Youree, 114 La. 182, 38 So. 135, 136, 3 Ann.Cas. 300:
 

 “It is noted that under this formula the jury are not at liberty to ‘disregard’ the testimony, but that ‘they are authorized to rely on their own opinions, as well as on the testimony adduced before them.’ It leaves them free to consult whatever knowledge they may possess outside of the testimony, and also free to consult their own judgment, and at the same time holds them down to the duty, under their oaths, of giving due weight to the testimony. Far from being authorized to disregard the testimony, they are held bound by it so long as it has not been discredited.”
 

 In weighing the testimony of the witnesses, the members of the jury may, of course, take into consideration the reasons given by each as the basis of his opinion as to the value of the property to be taken. An opinion expressed by a witness as to the value of property should be given little effect in the absence of an explanation by him of the reasons underlying his conclusion. If a witness knows the location of the property, is familiar with its physical characteristics, its adaptability for certain purposes, and has some knowledge of values gained by experience or observation, his testimony should be given weight and should not be disregarded. Verdicts of juries in cases of this kind are subject to review by appellate, courts, and, in order to determine whether a jury has manifestly erred in assessing the value of the property to be taken, a court of review must consider and weigh the testimony of the various witnesses and the reasons stated by each as a basis of his conclusion. In reaching its conclusion, the court should, and usually does, give some weight to the opinions of the jurors themselves.
 

 The 172-acre tract of land belonging to Mrs. Grey, the defendant, was, at the time this proceeding was begun, used as a farm and had been used as such for many years. In 1926 the tract belonged to John McW. Ford. In February of that year, Mrs. Grey loaned Mr. Ford $35,000 and as security for the loan took a mortgage on the land. Ford failed to pay the mortgage note, and Mrs. Grey foreclosed and bought in the property in October, 1931, for the amount of the mortgage less $1,000. She therefore paid for the property approximately $200 per acre in the year 1931.
 

 Reference to the maps and plats filed in evidence shows that the tract of land lies just outside the city limits of Shreveport, which city, according to the latest United States Census Report, has grown in population within the last 10 years from about
 
 *951
 
 75,000 to nearly 100,000 inhabitants. The northeastern portion of the tract fronts 500 or 600 feet on the Mooringsport Road, which is a paved highway running from Shreveport due north. On the north edge of the tract there is a subdivision designated on the maps as “Sunset Acres”. East of the southern end of the property and within a few hundred feet of it, the plats show another subdivision designated as “Model Gardens”. Adjacent to the tract at the south end is “Agurs”, a subdivision which has recently been incorporated into the City of Shreveport. No portion of the tract is as much as a mile from the city limits. The tract, therefore, is what some of the witnesses referred to as suburban property, near and accessible to the city because of the Mooringsport paved highway.
 

 As to the character of the land, Mr. Collier, a witness for plaintiff, who has been connected with the Louisiana Highway Commission as land agent for about 10 years, testified that the property is ■“fair farming land and it can be used for growing cotton, corn and hay, some portions of it for truck, garden stuff”.
 

 He testified that some of the southern portion is low land but susceptible of cultivation. The north portion of the tract is considerably higher. Mr. Collier and the other witnesses, both for plaintiff and for defendant, testified that about 40 or 50 acres of the north portion of the tract are considerably higher than the surrounding territory and that this part of the land is valuable for truck-farming and the growing of garden vegetables. The witnesses were of the opinion that it could be used for the growing of such crops as cotton, corn, hay, and could be developed for the growing of vegetables, etc.
 

 Mr. Collier stated that in his opinion the tract of land as a whole was worth $50 per acre as a farm and that due to its proximity to the city it was worth $100 per acre.
 

 Mr. Neal, a realtor, who lives in Shreveport, called as a witness for plaintiff, testified that the land as farm property was worth about $40 per acre, and said:
 

 “However, on account of its proximity to Shreveport, being more or less suburban acreage, I would add about sixty ($60.00) dollars to that, making it one hundred ($100.00) dollars an acre; that in my estimation is a fair value for the property in question.”
 

 Mr. May, another Shreveport realtor called as a witness by plaintiff, testified that the property could be classified into three grades. He said:
 

 “* * * there is a knoll or a hill which contains I would judge about forty acres of land, the balance of the land is bottom land, most of which appears to be a rather good grade of sandy loam soil; there was however, some very low or buckshot land in the tract, I could not estimate exactly what that was.”
 

 He testified that the farm was “in fairly good condition”. He said, however, that he noticed that some part of it was very grassy and “seemed to be heavily infested with Johnson grass, particularly in the
 
 *953
 
 low land and on the hilly portion of it there seemed to be practically no cultivation at all”. He did not, however, say that the hill portion of the land was not susceptible of cultivation. He valued the entire tract as farm property at $50 per acre, and said that because of its proximity to Shreveport he would double that value.
 

 Mr. Addison, another witness called by plaintiff, also in the real estate business, stated that the property fronted 900 feet on the old road (the Mooringsport Road) and thought that the portion of the property fronting on the road would be more valuable than that to the rear, and that in his opinion the property off the road was worth $50 or $60 an acre “all through”.
 

 Mr. Dunn, another realtor, called as a witness for plaintiff, testified that in his opinion the tract of land as a' whole was worth $35 to $50 an acre “just strictly as farm land”, and that on account of its proximity to the City of Shreveport he would add another $50 per acre “and make it approximately one hundred ($100.00) dollars total and average”.
 

 Mr. McCain, called by plaintiff, testified that he handled real estate in Caddo Parish, and that in his opinion defendant’s tract of land for farming property had a value of $75 per acre. He stated that “Most of it is low; some of it is buckshot and gumbo”.
 

 Mr. W. B. Noel, Jr., who owns an interest in some land located in the hill section of the parish north of defendant’s property, and who was called as a witness by plaintiff, stated that in his opinion the 21.11 acres sought as a right-of-way was worth $100 an acre.
 

 The first witness called by defendant was W. J. Crowder, who said that he had been engaged for many years in the business of appraising and selling real property in and around Shreveport; that at one time he was connected with the A. C. Steere Company, one of the largest developers of city and suburban real estate in that section of the state; that at one time he was connected with the real estate board of the City of Shreveport; that he had been employed as appraiser of real estate by the Commercial National Bank, and at present was employed to look after and handle the large real estate holdings of S. G. Sample. He testified that he had recently looked up the records of sales of property in the vicinity of defendant’s tract, which tract he had recently inspected on two occasions. He said he made these inspections for the purpose of forming an opinion as to the value of the tract. He said that in his opinion tire tract of land sought by the Highway Commission was worth $250 an acre.
 

 The basis of his valuation, as he stated it, was that the property is susceptible of division into small tracts, that there is good demand at this time for small tracts located near the city, and that such small tracts usually sold at high prices. He stated that the tract was accessible to the city because part of it fronted on the Mooringsport paved road. He said that, when he inspected the property, he found some portions of it badly infested with Johnson grass and weeds. He made it
 
 *955
 
 clear that he did not consider the farm as a whole in a high state of cultivation.
 

 The second witness called by defendant was Mr. N. B. Stoer, a Shreveport realtor, an admitted expert. He said that for 20 years he had been appraising property in the vicinity for the Federal government, for banks, for private individuals, and for insurance companies. He stated that he inspected defendant’s property “to arrive at the reasonable cash value of it”; that he familiarized himself with its location and general character, and that in his opinion the land to be taken was worth $250 an acre. He was asked what “elements” he considered in arriving at such valuation, and said:
 

 “The location of the property, its accessibility and approximate distance from the main highway, the Mooringsport Road, and due to the fact that it is just outside of the city limits of a growing city such as Shreveport, such as we all are familiar with, it has a possibility of division into smaller tracts and being sold at a profit.”
 

 He was asked, “Did you say possibility of improvement?” and replied: “Its susceptibility of being resubdivided. It is a fact that the property is susceptible to that type with its proximity to the city limits and its location on the road north from the city.”
 

 The court asked him whether his conclusion was based on present conditions “without regard to the possibility of a paved highway being put through it”, and he said, “Yes, sir.”
 

 J. H. Brown, president of Hicks Company, a large wholesale grocery concern in Shreveport, testified for defendant. He said that his company had owned suburban and farm land “both fairly close in and out a distance” from the city; that he was familiar with values of farm lands around Shreveport, was familiar with the defendant’s property. He was asked what he thought it was worth "from a farming standpoint”, and stated that, due to its location and the size of the tract, it was worth $200 an acre. He was asked whether he was considering its value “from a suburban standpoint or from a farming standpoint or both”, and he said: “I am considering it from two standpoints, first, that the property is well located to Shreveport which is important for farm products. Second, more and more people are coming to a view that a piece of farm property well in and the right size is one of the best investménts they can make as a matter of a home as well as a matter of livelihood.”
 

 C. P. Haygood, another witness called for defendant, said that he had been engaged in farming all his life and was operating the Querbes Plantation of 1,000 acres situated just south of the city limits; that he was familiar with defendant’s tract of land, and, although he had not lived in the vicinity of it for the last few years, he had kept in touch with it in a general way; that he had looked at the property several times with the view of buying or leasing it. He was asked whether any of the property was ever overflowed, and stated that a portion of it was overflowed in the year 1927. Some of
 
 *957
 
 plaintiff’s witnesses testified that a portion of the tract is low swamp and “buckshot” in character. They did not say that any part of it is too low for cultivation. One or two of them said that some of the land 'was subject to overflow from backwaters. But the testimony as a whole shows that only a few acres of the land have ever been injuriously affected by overflow except in the year 1927. In that year there was an unprecedented overflow in the Red River Valley. Levees broke, and lands which were considered theretofore as above overflow were submerged.
 

 Mr. Haygood stated that he was familiar with values of farm lands in the vicinity of Shreveport,. and was asked to state his opinion of the value of defendant’s tract, and said:
 

 “Well, I would say this that considering the location where the land is, being close to Shreveport I think it is worth far more than it would be if that same property was fifteen or twenty miles from Shreveport. I would say two hundred or two hundred and fifty ($200.00 or $250.-00) dollars an acre considering the size of the place. It is a small place, about the right number of acres that a farmer would want.”
 

 He further stated that, considering the location, he thought it was worth three times as much where it is as the same property would be if located 15 miles from the city. He gave what seems to be a reasonable explanation as to why some portions of the tract were not cultivated, which explanation was that- under present government regulations farmers were allowed to plant only 40 per cent of their acreage to cotton.
 

 Mr. John T. Bundrick, another witness for defendant, said that he was a farmer,, a loan broker who appraised farm and suburban property “for first mortgage loans and I sell real estate property”. Speaking of defendant’s tract of land, Mr. Bundrick said:
 

 “I think that is a beautiful individual farm from the standpoint of a man living in the city .or living on this unusual elevated knoll making it a home. I think it is an.ideal farm unit.”
 

 He stated that the property was susceptible of subdivision into smaller tracts. His method of arriving at the value of the property is not quite clear. He said that he appraised the property as a unit but did not state what his appraisal was. He said, “I broke it down to five, twenty up to thirty-five. acre tracts and I figured the value on each tract.” But he did not state what, that value was. He said that values would change as conditions changed, and spoke of the “present setup as the property now exists with the dedicated roads that are across the property as a combination farm and use it in the extreme south end as suburban property”. He said the value he would place on the property would be relative “because one year there is one thing and another year is something else”. He then said: “I would then say a low of fifty ($50.00) dollars an acre and a high of two hundred and fifty ($250.-00) dollars .per acre.”
 

 He stated that he appraised the property from another angle, that is, “as a
 
 *959
 
 small farm proposition, truck farming, especially from the standpoint of the dedicated roads and the truck farming land that is on the property using the south end which is near the city and the further land classed as farming land at a low of two hundred ($200.00) dollars and a high of three hundred ($300.00) dollars”.
 

 Vance Lombardino 'testified that he had been living on the property for 14 years and that only a few acres at any time had been injured by back-water except in the year 1927, when the levees broke.
 

 The testimony of Messrs. Crowder, Stoer, Haygood, and Brown is impressive. They stated more clearly than did the other witnesses the elements of value considered by them and their reasons for the estimates they made. We have given due consideration to their testimony as well as to the testimony of plaintiff's experts. Considering the testimony as a whole, and the fact that the defendant loaned Mr. Ford $35,000 on the property in 1926 and bought it in at foreclosure sale for practically the same amount in 1931, our conclusion is that the present value of the land to be taken, without regard to any enhancement of its value which may result from the building of the road, exceeds the value placed upon it by the jury. We think that the testimony as a whole warrants an appraisal of $150 an acre.
 

 As to the question whether the tract of land will be damaged by the construction of the highway diagonally across it, the testimony is conflicting. However, it convinces us that the tract will be damaged to a considerable extent. It will be severed into two tracts of about equal acreage. A portion of the road will be built on an embankment and the rest of it through a cut, making it inconvenient to cross from one side to the other. Practically the same situation which was found to exist in the case of Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1, prevails here. In that case we held that the severing of the plantation into two tracts would result in damage to the owner of the land.
 

 Considering the tract of land as a farm unit, we think it will be damaged to some extent by the building of the highway. On the other hand, the testimony shows that the owner of the property will derive some benefits from the building of the road. A number of the witnesses said that, due to the close proximity of the property to the City of Shreveport, small tracts of it and building lots fronting on the new highway could be sold more readily and at much higher prices than parcels of like acreage could be sold under present conditions. The enhanced value of the property fronting the new road is a benefit which will not be shared by the community generally and is therefore a special benefit which defendant will receive. We think the damage to the property as a farm unit will be offset by the special benefits which defendant will derive from the building of the new road.
 

 When part of a tract of land is taken for the public use, it frequently happens that the construction and maintenance of the public work for which the land
 
 *961
 
 is taken inflicts some injury upon the remainder of the tract or parcel. And, while this is true, yet in other respects the remaining land may be benefited by the construction of the work. The benefits or advantages, if any, which may result from the construction of the work are either general or special. General benefits are those which are shared alike by all property owners in the neighborhood or community. Such damage as a property owner may sustain as a result of the construction and use of a public work cannot be offset by these general benefits. The reason is that the citizen whose property is taken cannot be compelled to bear more of the cost of the public improvement and general benefits resulting therefrom than is borne by other property owners whose property is neither taken nor damaged for the public purpose. In the case at bar, if the Highway Commission were allowed to offset defendant’s damage by the general benefits, the result necessarily would be that she would contribute more to bring about the general benefits than her neighbors would. In Louisiana Highway Commission v. Hoell, 174 La. 302, 140 So. 485, it was held that damages to the remaining land cannot be offset by general benefits.
 

 ' The rule is different as to peculiar or special benefits, or those affecting a particular estate by reason of its direct relationship to the improvement. If, as a result of constructing a new work, the remaining land or part of it is left fronting on a road or street, and the land fronting the road or street is more desirable and more valuable because of the frontage, the advantage thus gained is a special or peculiar benefit, and damages to the remaining property may be offset by such benefits. It has been so held by the Supreme Court of the United States. McCoy v. Union Elevated R. Co., 247 U. S. 354, 38 S.Ct. 504, 62 L.Ed. 1156; United States v. River Rouge Improvement Co., 269 U.S. 411, 46 S.Ct. 144, 146, 70 L.Ed. 339.
 

 In United States v. River Rouge Improvement Co., the court said:
 

 “We are of opinion that an increase in the value of the remaining .portion of any parcel of land caused by its frontage on the widened river, carrying a right of immediate access to and use of the improved stream, would constitute a special and direct benefit within the meaning of the statute, as distinguished from a benefit common to all the lands in the vicinity, although the remaining portions of other riparian parcels would be similarly benefited. This is in accordance with the rule recognized by this court and established by the weight of authority in the state courts in reference to special benefits to lands abutting upon a new or widened street.” (Citing a long list of cases.)
 

 Counsel for defendant concede that, in cases of this kind, such damages as the landowner may sustain as a result of the construction may be offset by special benefits. But their argument is that defendant will receive no peculiar or special benefit from the construction of the road, for the reason that defendant’s land will receive only such benefits from the proposed highway as are
 
 *963
 
 common,to all other lands fronting on the road. In other words, their argument is that, because other lands which front on the highway will be benefited, the benefits to defendant’s land are not special, but general.
 

 Counsel are mistaken. In the River Rouge Improvement Co. case, supra, the Supreme Court quoted with’ approval the following extract from Allen v. Charlestown, 109 Mass. 243:
 

 “The benefit is not the less direct and special to the land of the petitioner, because other estates lipón the same street are benefited in a similar manner. The kind of benefit, which is not allowed to be estimated for the purpose of such deduction, is that which comes from sharing in the common advantage and convenience of increased public facilities, and the general advance in value of real estate in the vicinity by reason thereof. * * * The advantages of more convenient access to the particular lot of land in question, and of having a front upon a more desirable avenue, are direct benefits to that lot, giving it increased value in itself. It may be the same, in greater or less degree, with each and every lot of land upon the same street. But such advantages are direct and special to each lot. They are in no proper sense common because there are several estates, or many even, that are' similarly benefited.”
 

 In the recent case of State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 15 S.W.2d 338, 341, the Supreme Court of Missouri quoted with approval the following extract from Wilson v. Greenville County, 110 S.C. 321, 96 S.E. 301:
 

 “ * * * the fact that all persons who own lands adjacent to the road enjoy special benefits does not make such benefits general. A special benefit to one tract on the highway does not become general, because a like benefit is enjoyed by many tracts that are also contiguous to the highway. The benefit accruing to each tract is special to it.” See 20 C.J., page 825, note 90.
 

 It quoted also the following extract from Trosper v. Board Commissioners of Saline County, 27 Kan. 391:
 

 “The right of a person to pass from his land immediately into a public highway, or to pass from a public highway immediately upon his land, is something valuable, and is certainly something special to him.”
 

 For the reasons assigned, the verdict and judgment appealed from are amended by increasing the amount awarded to defendant for the .land taken from $100 per acre to $150 per acre, and as thus amended the verdict and judgment are affirmed; costs to be paid by plaintiff.
 

 O’NIELL, C. J., does not take part.