135 So.2d 302 (1961)
CITY OF NATCHITOCHES and Waterworks District #1 of the Parish of Natchitoches, Louisiana, Plaintiffs and Appellants,
v.
E. D. COX, Defendant and Appellee.
No. 445.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1961.
Watson, Williams & Brittain, by Arthur C. Watson, Natchitoches, for plaintiffs-appellants.
John Makar, Natchitoches, for defendant-appellee.
Before SAVOY, FRUGE and CULPEPER, JJ.
CULPEPPER, Judge.
This is an expropriation proceeding. Plaintiffs are in the process of building Sibley Lake Water Reservoir to contain 2,000 square acres, with a fixed normal water level of 116 feet above mean low sea level. The engineers have estimated that in periods of excessive rain the water level could go as high as 122 feet above mean sea level. Plaintiffs seek to expropriate fee title to all lands lying below the 116 foot *303 contour and a servitude giving plaintiffs the right to flood all lands lying between the 116 foot and the 122 foot contour above mean low sea level. The sole issue is the amount of compensation and severance damages due defendant by reason of the expropriation of 4.01 acres in fee, and a servitude on 2.53 acres as shown on a plat attached to plaintiff's petition.
The lower court fixed the market value of defendant's land at $750 per acre and consequently awarded defendant $3,007.50 for the 4.01 acres taken in fee. As to the 2.53 acres on which a servitude was taken, the district judge allowed 80% of the fee value or the sum of $1,518. The trial judge also awarded severance damages amounting to 50% of the fee value of 1.4 acres remaining, which will be cut off from the paved highway after the taking. The sum of $525 was awarded in severance damages. The total amount of the trial court's award was the sum of $5,050.50.
Plaintiffs have appealed, contending that the amount awarded was excessive, particularly the amount awarded for the servitude and for severance damages. Defendant has answered the appeal asking that the total amount of the award be increased to at least $13,000.
The record shows that the property to be expropriated is a portion of a tract of land located on Louisiana State Highway # 1 just outside the city limits of Natchitoches, Louisiana, in a mixed commercial and residential area. The land being expropriated, including the servitude, fronts 640 feet on said highway and runs back therefrom the depth of defendant's property, except that a 1.4 acre "island" will be left in the rear surrounded by the new lake and the adjoining property of Mr. Pardue. The topography of the area consists of hills and valleys and the property being expropriated is low, level land lying in a valley between two hills. The land is presently unimproved and is being used for pasture. A small "creek or bayou" originating on the east side of the highway from the subject property runs through culverts under the highway and thence across the southern portion of defendant's property. The evidence shows that in periods of unusually hard rains the water has banked up on the east side of the highway and run over the highway and thence across the low lands of the defendant. The evidence shows clearly that, even before the taking, the property to be expropriated could not have been used for residential or commercial purposes unless a certain amount of filling and leveling was done.
Addressing ourselves first to the question of the amount of compensation to be paid for the 4.01 acres taken in fee, we find the law is well settled that the expropriating authority must pay its market value when taken, that is, its fair value between one who wants to purchase and one who wants to sell under ordinary and usual circumstances. See Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914, 915, and the many cases cited therein. To prove market value the plaintiff first called as an expert witness Mr. Harold Kaffie, who for many years has served as president of the Exchange Bank in Natchitoches, and also as vice president and appraiser for the Progressive Mutual Building & Loan Association. It was Mr. Kaffic's opinion that at the time of the taking this 4.01 acres had a market value of $3,000, which is substantially the same as the $750 per acre found by the trial judge. Plaintiff also called as an expert witness, Mr. George Black, Jr., whose qualifications were not nearly so impressive as those of Mr. Kaffie, and who appraised this property at approximately $150 per acre. The trial judge disregarded entirely the testimony of Mr. Black, citing Domino v. Domino, 233 La. 1014, 99 So.2d 328, which holds that the testimony of an expert, qualified and accepted as an expert witness, should be given effect only if and when it appears to be well grounded from the standpoint of sincerity and good sense. We find no error in the trial judge's conclusion that Mr. Black's testimony was unrealistic and not well reasoned. We note that on appeal, plaintiff has not particularly complained *304 of the valuation of $750 per acre found by its expert witness, Mr. Kaffie, which valuation was also found by the trial judge.
The defendant called as an expert witness, Mr. John G. Gibbs, an attorney at law who also owns an interest in a realty company, and has bought and sold a considerable amount of land in the Natchitoches area for the past 25 or 30 years. Mr. Gibbs valued the property to be expropriated at $20 per front foot, but under cross-examination he was unable to name any recent sale of comparable property in the area for as much as $20 a front foot. The nearby property purchased by the Church of the Latter Day Saints for approximately $2,000 per acre, as described by Mr. Gibbs, was located on a hilltop and therefore not comparable to the property being expropriated herein, which was admittedly low, and would have to be filled and leveled before it could be used for residential or commercial purposes.
Defendant also called as an expert witness Mr. Harry H. Turpin, a coach at Northwestern State College, who also deals in real estate. Mr. Turpin valued the property to be expropriated at $30 a front foot, but from his testimony taken as a whole, the impression is given that he thought defendant's property possibly had this value of $30 a front foot because of the possibility of commercial use for a place of business to store, repair and sell boats after the proposed lake has been completed. Also we note that Mr. Turpin was vague and uncertain as to whether defendant's property in its present state could be used for residential or commercial purposes without going to the expense of filling and leveling it. Other evidence in the record shows clearly that this would have to be done.
We note further that Mr. Turpin's valuation was based largely on an alleged option taken by "Natchitoches Motel, Inc." to purchase 5 acres fronting on the highway near defendant's property for $5,000 an acre. The trial court sustained an objection by plaintiff to the testimony regarding this option on the grounds that the written instrument would be the best evidence thereof. No written instrument setting forth said option was ever introduced. We note that the record also shows Mr. Turpin was the owner of said 5 acres of land and also the promoter and part owner of Natchitoches Motel, Inc., which held the alleged option to purchase said land for the construction of a Holiday Inn. Also, Mr. Turpin testified that he had very recently sold a one-half interest in 215 acres located near defendant's property for $50,000 which would be approximately $471 per acre.
Although the defendant introduced considerable testimony as to various alleged offers made to defendant to purchase this property, we note from the trial judge's well-considered written opinion that he properly refused to consider such evidence. Our Supreme Court has held that such offers to purchase should not be considered. See Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260; Louisiana Railway & Navigation Company v. Morere, 116 La. 997, 41 So. 236; State, Through Department of Highways v. McDuffie, 240 La. 378, 123 So.2d 93.
Viewing the evidence as a whole, we find no manifest error in the trial judge's conclusion that this property had a market value of $750 per acre at the time of the taking.
Plaintiff's next contention on appeal is that the trial court's award of 80% of the fee value, as the value of the servitude taken on the 2.53 acre parcel of land, is excessive. In plaintiff's petition the nature of the servitude is set forth as follows:
"This servitude shall give the right to the plaintiffs to back water over or under, submerge, flood or otherwise damage this area through backwater, or otherwise, whether caused by flooding, erosion, seepage, ground water, lack of drainage, obstruction of drainage, or any other manner whatever *305 resulting from the construction, operation or maintenance of the Sibley Lake Water Reservoir; the dam or spillway being designed to hold the water level in the reservoir at approximately the elevation of 116 feet above mean sea level."
Such a servitude would obviously destroy the usefulness of this 2.53 acres for either residential or commercial purposes. No one would want to construct improvements on land burdened with such a servitude. We find no error in the trial court's conclusion that because of said servitude the value of this land would be reduced from $750 per acre to $150 per acre.
Plaintiff's final specification of error is that the lower court, in fixing severance damages in the amount of 50% of fee value to the 1.4 acre tract remaining after the taking, did not consider as a setoff against these severance damages the special benefit, which will accrue to said tract as a result of the construction of the new lake.
It is well settled in our jurisprudence that although general benefits, shared alike by all property owners in the neighborhood or community, cannot be offset against the amount of severance damages to remaining land, any peculiar or special benefits accruing to the remaining land, by reason of its relationship or location adjacent to the improvement, may be set off against severance damages to said remaining land. See Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654; East Baton Rouge Parish Council v. Roller, La.App., 94 So.2d 505; East Baton Rouge Parish v. Edwards, La.App., 119 So.2d 175; 18 Am.Jur. 945, Sec. 301; 29 C.J.S. Eminent Domain § 183(b), p. 1064.
Most of the cases dealing with special benefits to remaining land, involved the construction of highways and streets, but in the case of Louisiana Highway Commission v. Grey, supra, our Supreme Court cited with approval the case of United States v. River Rouge Improvement Company, 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339, where the United States Government improved a navigable river and the court held as follows [197 La. 942, 2 So.2d 661]:
"`We are of opinion that an increase in the value of the remaining portion of any parcel of land caused by its frontage on the widened river, carrying a right of immediate access to and use of the improved stream, would constitute a special and direct benefit within the meaning of the statute, as distinguished from a benefit common to all the lands in the vicinity, although the remaining portions of other riparian parcels would be similarly benefited. This is in accordance with the rule recognized by this court and established by the weight of authority in the state courts in reference to special benefits to lands abutting upon a new or widened street.' (Citing a long list of cases.)"
The transcript of testimony in the instant case contains the following portion taken during cross-examination of defendant's expert witness, Mr. Turpin:
"Mr. Watson: Q. Now, Mr. Turpin, actually, you say this land of Mr. Cox'syou say you were interested because the lake would come in there and it would be nice for a boat showplace? A. Landing place, place for repairs, place to sell boats and it is readily available to the highway.
"Q. In other words, the lake being built there, it really makes him a wonderful location, doesn't it?

"Objection
"Mr. Makar: I am going to object to that. I don't think you can use enhanced value as a criterion.
"Mr. Watson: That'switness mentioned boat placethat's the reason he was interested in it, so I certainly think it is pertinent to show that if *306 the lake wasn't there, it would not be a boat place. Can't run a boat in a pasture.
"The Court: You can't use that as a basis for computing values.
"Mr. Watson: I understand, your Honor, that the Louisiana courts do not allow the enhancements to offset the value of the land, although the Federal courts are opposite, but what I amI just want to find outthe witness has just testified that he was interested in using it as a boat place, and therefore, that's the reason he was interested in itto have a boat showplace and repair shop."
It is our opinion that if plaintiff had been permitted to show, and had shown that the market value of defendant's remaining land would be increased after the lake is constructed because of its new usefulness for a commercial establishment to sell, repair, land and store boats, this increment in market value could be used to offset severance damages to said remaining property. In its present state, the record does not show the amount of such special benefits, if any, but the reason for this may be that counsel for the plaintiff concluded, after the court sustained the above-quoted objection, that he would not be able to go into the matter further. Our only alternatives in this situation are either to deny the offset or remand the case for additional evidence. We have decided against a remand for these reasons: As shown by the above-quoted portion of the record, counsel for plaintiff did not make it clear whether he was trying to prove the amount of an offset by reason of special benefits or whether he was simply trying to weaken the testimony which had been given by Mr. Turpin on direct examination that he valued the property at $30 per front foot. After the trial judge sustained the objection by counsel for the defendant with the statement that "You can't use that as a basis for computing values" we note that counsel for the plaintiff did not pursue the matter. Furthermore, plaintiff has not, on appeal, asked for a remand and we are most reluctant to order one in the absence of such a request.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed.