CULPEPPER, Judge.
This is an expropriation by a declaration of taking, filed under the provisions of L.S.A.-R.S. 48:441-460. The State took a portion of defendant’s land, measuring 214.04 feet by 27.15 feet, for a new highway. Plaintiff deposited $1,200 as compensation for the strip of land and railroad spur track taken, but no amount whatever was paid for severance damages. Defendant answered, applying for a trial to determine the market value of the property expropriated, plus severance damages, in the total sum of $35,498.30. After trial on the *668 merits the district judge held that the market value of the property expropriated was $1,200 and that any damages to the remaining land were more than off-set by special benefits resulting from the new highway.
The issues are the market value of the property expropriated, at the time of the taking on December 30, 1960, and the amount of any severance damages to the remainder of defendant’s property. If there were severance damages, a third issue is whether the amount thereof was offset by special benefits accruing to the remaining property as a result of the construction of the new highway.
The facts show that Hayes and his brothers had operated a ready-mix concrete business in New Iberia for several years prior to 1953 when they bought the subject property, as a part of a larger tract, for the purpose of expansion and construction of a new plant. The property was well suited for this purpose, it being located within the city and near a railroad track from which a spur could be constructed to bring in bulk cement. A graveled street ran from the property out about two blocks to Highway 90, which is the main street of New Iberia.
By 1957 the Hayes brothers had built the spur track and the concrete foundations for their plant. These foundations consisted of a concrete slab measuring 22 feet by 18 feet and four concrete pillars, each four feet in height, together with a concrete trough about 60 feet long which was intended to be used for a conveyor system for bulk cement from the spur track to the mixing apparatus. However, no further portion of the plant was constructed. In 1957 the Hayes’ sold their entire concrete mixing business to a competitor, Perry J. Burke. As a part of the consideration for this sale, the Hayes’ agreed not to operate a concrete mixing business in New Iberia for a period of ten years. The defendant, Warren J. Hayes, then actually went to work for Burke.
Later, the Hayes’ partitioned their property and the defendant, Warren J. Hayes, acquired the subject tract of land, a portion of which was expropriated. It is approximately rectangular in shape with a front of about 140 feet on Moore Street (the graveled outlet) by a depth of 214 feet along a dedicated, but not even graded, street next to the railroad. The 214 feet of spur track and the concrete foundations above described were located on this tract.
After 1957 the property was not used and had grown up in weeds when the State expropriated, in 1960, the strip measuring 214.03 feet by 27.15 feet off the side of the property next to the railroad. The State also took the spur track and part of the-concrete trough.
Mr. Hayes introduced in evidence the testimony of a scrap metal business owner, and' two real estate brokers, who testified that before the expropriation the property was best suited for a concrete mixing business, because -of the spur track and the existing concrete foundations for that type of equipment. They were of the opinion it could also be used for other businesses needing spur tracks, but in this event the concrete-foundations would have to be removed.. Their estimates of the value of the land varied from $23,000 to $30,000. Defendant himself valued his property at approximately $26,000, but it is apparent he gave this figure as the value to himself for use-as a concrete mixing plant, and not market value.
The only sale of comparable property used by defendant’s witnesses was a 1960 sale from Degravelle to Coburn of a tract of land located only about five blocks away, but fronting 90 feet by 200 feet on Highway 90 which is the main traffic artery of the city. The price was $20,000, or about $1.10 a square foot. Based principally on this sale, defendant and his experts contend his property is worth approximately $1.00 a square foot or a total of about $26,000 for the entire tract, and $5,247 for the 5,303 square feet taken.
On the other hand, the State’s expert appraisers, Mr. Fleming and Mr- Angers, *669 both of whom were local real estate brokers of many years experience with all types of appraisals and properties, listed and described in detail several recent sales of comparable property in the vicinity to support their estimate that the bare land was worth no more than 20‡ a square foot for industrial or warehouse use.
We agree with the district judge’s finding that “the testimony of defendant’s expert witnesses is not proper as a basis for fixing values, * * * their comparables were not good. * * * ”
The defendant’s experts were not as well qualified by training or experience with this type of property as the State’s witnesses. The one comparable they used was actually not comparable. They apparently ascribed some special value to the property by reason of the foundations for a concrete mixing plant, but the evidence shows there were already two concrete mixing plants in New Iberia and little likelihood that there would be a demand for a site for another.
Applicable here is the succinct statement of the law set forth in the recent case of State through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (La.Sup.Ct.1961) as follows:
“ ‘In expropriation suits the measure of compensation to be awarded for the property taken is the market value of that property — that is, the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. Most important in determining this market value are sales of similar or comparable properties in the neighborhood. If evidence of similar sales is not available, the value of the land expropriated must be determined by other means, generally the testimony of experts. The rule here is that the testimony of each expert should be given effect if that testimony appears to be well reasoned and sincere. However, if the expert testimony impresses the court unfavorably, it will be disregarded. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; Domino v. Domino, 233 La. 1014, 99 So.2d 328; State v. Grand Consistory, 237 La. 1005, 112 So.2d 692.’ State of Louisiana Through Department of Highways v. Hub Realty Company, Inc., 239 La. 154, 163, 118 So.2d 364, 368. See, State of Louisiana Through Department of Highways v. Havard, 239 La. 133, 118 So.2d 131; Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491; Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40.”
We conclude that the market value of the bare land at the time of the expropriation was 20‡ a square foot or the sum of $1,060 for the 5,303 square feet taken. The-State’s two expert appraisers testified that the remainder of the $1,200 deposited was-arrived at by estimating that the spur track increased the value of the property by 10%,. that is, about 2‡ per square foot, which would make a total of 22‡ per square foot resulting in the sum of $1,166 for the land and spur track taken. They rounded the figure off at $1,200. They allowed no. amount whatever for the portion of the concrete trough which was taken because they were of the opinion that the concrete trough and foundations, which were suitable only for a concrete mixing plant, actually reduced the value of the property. A prospective purchaser for any other use would have had to remove these concrete structures at an expense of about $2,500.
This reasoning as to the concrete structures appears logical and supported by the evidence, but we think a greater amount should have been allowed for the spur track. The evidence shows that a spur track costs, approximately $12 per lineal foot to construct and it could have been used by many types of industries, as well as warehouses, and other commercial businesses. The State’s own appraiser, Mr. Angers, testified' that originally he allowed $11 a foot for the 214 feet of spur track, on the theory that it was a part of the land taken. However,. *670 the Highway Department’s attorneys ruled that the spur track was movable and Mr. Angers removed this amount from his appraisal. We think clearly that this spur track, constructed on the property by the owners for its service and improvement, was immovable by destination under the provisions of L.S.A.-C.C. Article 468. See Coguenhem v. Trosclair, 137 La. 985, 69 So. 800. The evidence here shows that plaintiff actually removed the track and defendant does not know what disposition was made of it. We believe the spur track added to the market value of the land the sum which it cost to construct, that is, $12 per lineal foot or the total sum of $2,568. Defendant is entitled to this amount, in addition to the value of the bare land, as compensation for the property taken.
Now turning to the issue of severance damage to the remaining land, all of the expert witnesses were of the opinion that, after the taking, the property could no longer be used for a concrete mixing plant and the concrete foundations would be absolutely worthless. Actually, these structures reduce the value of the remaining property because it will cost approximately $2,500 to remove them and level the land. Defendant’s experts testified that as a result of the taking, the remainder of defendant’s land would be diminished in value about $7,000 and that defendant is also entitled to the original construction cost of the concrete foundations, as well as the cost of removing these improvements from the property. Defendant claims a total of $12,000 in severance damages.
Defendant’s expert witnesses admittedly did not even consider the possibility that any consequential damages to the defendant’s remaining property might be offset by the special benefits accruing to the property by virtue of its location on the new highway. Defendant contends that any such benefits are generally shared by all of the property owners in the area, and therefore cannot be urged by the State as an offset against severance damages. The law in this regard is set forth in the recent case of City of Natchitoches v. Cox, 3rd Cir.App.1961, 135 So.2d 302 in which the court held:
“It is well settled in our jurisprudence that although general benefits, shared alike by all property owners in the neighborhood or community, cannot be offset against the amount of severance damages to remaining land, any peculiar or special benefits accruing to the remaining land, by reason of its relationship or location adjacent to the improvement, may be set off against severance damages to said remaining land. See Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654; East Baton Rouge Parish Council v. Koller, La.App., 94 So.2d 505; East Baton Rouge Parish v. Edwards, La.App., 119 So.2d 175; 18 Am.Jur. 945, Sec. 301; 29 C.J.S. Eminent Domain § 183 (b), p. 1064.”
The State’s two appraisers testified that, as a result of this expropriation, defendant’s remaining property will have a frontage of 214 feet by a depth of about 110 feet on the new highway which will be a main traffic artery. The property will now have new commercial uses for such things as filling stations, drive-ins, beauty parlors, barber shops, office buildings and other types of commercial establishments which need locations on main traffic arteries.
These experts testified further that whereas property values for industrial use are usually figured on a square foot basis, because the area is important, the value of property for commercial purposes is usually figured on a front foot basis. This property is now worth at least $75 per front foot or a total of $16,050. As set forth above, we have found that, according to the State’s witnesses, the value of the bare land before the taking, at a square foot, was about $6,000. On this basis defendant’s remaining land, after the taking, was worth about $4,800. The special benefits to defendant’s remaining land have in *671 creased its value by approximately the sum of $11,000 which far more than offsets any amount recoverable for severance damages by reason of loss of the spur track, the uselessness of the foundations or the diminished size of the land. We conclude the trial judge correctly disallowed any severance damages.
For the reasons assigned the judgment appealed is amended so as to award 20‡ per square foot or the sum of $1,060 for the bare land taken plus $2,568 representing the value of the spur track which was taken. The total judgment is $3,628. Defendant is relieved of the payment of all court costs. Otherwise than as herein amended the judgment appealed is affirmed.
Amended and affirmed.