332 So.2d 918 (1976)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
WESTPORT DEVELOPMENT COMPANY, INC., Defendant-Appellee.
No. 12905.
Court of Appeal of Louisiana, Second Circuit.
May 24, 1976.
*919 William W. Irwin, Jr., Jerry F. Davis, Johnie E. Branch, Jr., Bernard L. Malone, Jr. by Bernard L. Malone, Jr., Baton Rouge, for plaintiff-appellant.
Hargrove, Guyton, Ramey & Barlow by Michael R. Mangham, Shreveport, for defendant-appellee.
Before BOLIN, PRICE and MARVIN, JJ.
BOLIN, Judge.
By this action the Department of Highways of the State of Louisiana expropriated property owned by defendant, Westport Development Company, Inc., in Caddo Parish, Louisiana. The property expropriated consisted of the taking in full ownership of two tracts of 9.258 and 7.675 acres, respectively, and the taking of a permanent drainage servitude over a .291 acre tract. The Department also took other tracts which are not at issue here.
Pursuant to Louisiana Revised Statutes 48:441 et seq., the Department paid $142,573 into the registry of court as just compensation for the taking of all the tracts. Following trial the lower court awarded $260,822.47 for the three tracts taken and $1,522.50 as severance damages for property located between two drainage servitudes. The court also awarded witness fees of $1,825.00 and $1,575.00 for defendant's two appraisers. Plaintiff appeals and we affirm.
On appeal the Department assigns three errors: (1) the amount awarded as compensation for the taking is excessive; (2) no severance damages should have been awarded; and (3) the amount of expert witness fees is excessive.
*920 Defendant, Westport, owned an irregular tract of land containing approximately 165 acres located at the Pines Road overpass over Interstate 20 on the west side of Shreveport. All the appraisers agreed this area of Shreveport was experiencing a growth in commercial, residential, and light industrial development.
The Pines Road bisects defendant's property from north to south with approximately 76 acres lying on the east side of the road and approximately 90 acres lying on the west side. The property is bounded on the north by a frontage road running alongside 1-20 and is bounded on the south by West 70th Street. The Department took 9.258 acres from the 90 acre parcel and 7.675 acres from the 76 acre tract for the construction of a full interchange at 1-20 and Pines Road where there had previously been a normal highway overpass. The property taken is an irregular strip along the northern boundary of the property which faces 1-20 and the frontage road.
We address ourselves first to the issue of the correctness of the award for the property taken. The appraisers for plaintiff and defendant reached different conclusions as to value because they employed different techniques in appraising the property. The Department's appraisers utilized what is known as the "average unit value" approach. Under this method the award for the land taken is based on the average unit value of the entire tract; that is, the award for the part taken should bear the same proportion to the value of the whole as the area taken bears to the total area of the entire tract.
The defendant's appraisers used the "front andrear land" method of evaluation. State, through Department of Highways v. Hoyt, 284 So.2d 763 (La.1973), explained this approach as follows:
"As summarized by the excellent treatise, Dakin and Klein, Eminent Domain in Louisiana, p. 173 (1970), our state's jurisprudence holds: "* * * the highest and best use of the land actually taken is to be considered in determining fair market value. When there is a partial taking and the land expropriated has a different highest and best use than the remainder of the landowner's tract, it appears that the courts will value the land taken separately from the remainder on the basis of its own highest and best use and will not consider the value of the land taken in relation to the whole tract.'
"The landowner is thus to be awarded the actual market value of the particular portion of the property taken, valued according to its highest and best use. He is not limited to its average per-acre value as a pro rata portion of the parent tract where the front portion has a different and higher best-use value."
Based on adjusted comparable sales, the Department's appraiser valued the entire tract at $9,000 per acre or 21¢ per square foot. Using many of the same comparables but making different adjustments, the defendant's appraisers valued the property taken at 35¢ per square foot while admitting that 21¢ per square foot for the entire tract of 165 acres was probably a correct valuation.
The two approaches used by the appraisers are both acceptable methods of valuing property. The goal in expropriation proceedings is to award just compensation to the owner for the taking of his property. The particular method of appraisal is only a means to achieve that end. In this case, we find the "front landrear land" approach most nearly reflects the value of the property taken. The evidence shows conclusively that the front land taken, which has a highest and best use as commercial property, has a view to 1-20 and has access to the frontage road, is worth more than the rear land which has no view to 1-20, has no access to the frontage road, and has a highest and best use in part as residential property.
*921 Using the "front landrear land" method, defendant's appraisers placed a value of 35¢ per square foot on the part taken. We find the record amply supports such a value.
The second issue relates to severance damages. Defendant's appraisers admit the great portion of the remaining property did not suffer any severance damage. However, they contend a small parcel of property located between two permanent drainage servitudes has been damaged at 50% of its value. The parcel contains approximately 8700 square feet and varies in width from 14 feet to 40 feet. Defendant's appraisers testified that possible uses of this parcel were severely limited because of its shape and size.
The Department argued there were no severance damages or, alternatively, the damage should be offset by the special benefits accruing to the property as a result of the construction of the interchange. The Department also contends the method used by defendant's appraisers to determine severance damages was invalid since a complete "before and after" appraisal of the entire tract was not made.
We find no error in the method used by defendant's appraisers in calculating the amount of severance damages. The method was a "before and after" appraisal since the only area to suffer any damage was the area between the two servitudes. Thus, the entire remainder was damaged only to the extent the parcel between the two drainage servitudes was damaged. We agree with the finding of the trial court that the parcel suffered severance damage of 50% of its value.
State, Department of Highways v. Trippeer Realty Corp., 276 So.2d 315 (La. 1973) stated the general principles regarding setoff of severance damages against special benefits:
"The expropriating authority is allowed to offset against severance damages any special benefits accruing to the remainder of the property. However, the authority has the burden of proving these special benefits. State v. Central Realty Co., 238 La. 965, 117 So.2d 261 (1960); Thomas & Warner v. City of New Orleans, 230 La. 1024, 89 So.2d 885 (1956).
"Special benefits are those which arise from the peculiar relationship of the land in question to the public improvement, which will result from the taking. La. Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941). Special benefits are to be distinguished from general benefits (for which there is no setoff against severance damages). A general benefit is one which arises merely from the fulfillment of the public object which justified the taking; there is no particular relationship between the remaining property and the public improvement. State v. Marks, 188 So.2d 653 (La.App.4th Cir. 1966), Louisiana Highway Commission v. Grey, supra."
Here, the Department has not borne its burden of proving any special benefit nor has it attempted to prove the amount of any benefits. Any benefits arising from the construction of the interchange such as increased traffic or greater access to 1-20 is a general benefit to all the landowners in the vicinity and merely results from the "fulfillment of the public object which justified the taking." State, Department of Highways v. Crow, 286 So.2d 353 (La. 1973).
Last for consideration is the question of whether the expert witness fees were excessive. The lower court awarded fees of $1825 and $1575 for defendant's two expert appraisers. The Department argues these fees are excessive and cites our decisions in State, Department of Highways v. United Pentecostal Church of Hodge, 313 So.2d 886 (La.App.2d Cir. 1975) and State, Department of Highways v. Whitman, 313 So.2d 918 (La.App.2d Cir. 1975) in support of its argument.
*922 In assessing expert witness fees, each case must be decided on its own peculiar facts. In view of the expertise of the appraisers, the time spent on the appraisals, the difficulty of the appraisal, the amount involved in the award, and the degree to which the appraisals aid the court in its decision, we find no error in the amount of expert witness fees as fixed by the trial court.
Accordingly, the judgment is affirmed. The appellant is cast with all costs which may be lawfully assessed against it.