HALL, Judge.
Aurora Properties, Inc. filed suit on December 21, 1966 against the Sewerage and Water Board of New Orleans for $383,160.00 (plus 5% interest thereon from judicial demand and costs) being the amount allegedly due as “just and adequate compensation” for an unlimited and perpetual servitude in, to, and over 24.029 acres of land which it had transferred to the Sewerage and Water Board on September 30, 1966. The amount sued for included $338,031.00 as the fair value of the land and the sum of $45,129.00 as severance damages.
In its answer the Sewerage and Water Board admitted all the allegations of plaintiff’s petition except those relating to quantum. Upon filing its answer defendant deposited the sum of $220,943.00 in the registry of Court for plaintiff’s account being the amount defendant admitted plaintiff was entitled to receive for the 24.029 acre servitude. Defendant contends that plaintiff is not entitled to receive, and that defendant is not obligated to pay any additional sum therefor.
Plaintiff withdrew the amount deposited in the registry under an order of Court providing that defendant would receive a credit for this payment on account of any judgment that might be rendered “except that plaintiff shall not be entitled to receive from defendant payment of any interest on any part of the $220,943.00.”
The overall question presented to the Trial Court was the question of the value of the servitude which plaintiff had transferred to defendant, and in this connection all parties are in agreement that there is no practical difference between the value of the servitude and the value of the fee.
Following trial on the merits the Trial Judge found the fair market value of the land to be $265,358.40 as of September 30, 1966, the date of its transfer to the Sewerage and Water Board, and that plaintiff was entitled to an additional sum oL$5,-000.00 as severance damages, making a grand total of $270,358.40. From this amount the Trial Judge deducted the $220,-943.00 deposited in the registry and rendered judgment in plaintiff’s favor for the net sum of $49,415.00 together with legal interest thereon “beginning 30 days after the date of this judgment.” He also fixed the expert witness fees of Max J. Derbes, Jr. and Thomas B. Dupree (plaintiff’s appraisal experts) at $700.00 each and taxed the fees as part of the costs to be paid by the Sewerage and Water Board.
From this judgment both parties appealed.
*169 Plaintiff’s right of action herein emanates from and is based upon a written contract between it and the Sewerage and Water Board dated September 30, 1966, referred to in the record as “The Development Agreement.” A background statement is necessary to an understanding of the case.
Plaintiff is the owner of a tract of land measuring 411.84 acres situated in the Fifth Municipal District of the City of New Orleans in what is commonly known as the “Lower Coast” portion of Algiers. Plaintiff proposed to subdivide, improve and develop this tract for residential, commercial and industrial uses and to that end secured on March IS, 1966 a tentative approval of its proposed subdivision from the City Planning Commission of New Orleans, final approval being subject to the approval of various agencies of the City including the defendant Sewerage and Water Board.
Negotiations by plaintiff looking to the approval of its subdivision plans by the defendant Sewerage and Water Board were commenced by plaintiff in April 1966. At that time the defendant Board had under consideration and had assigned high priority to construction and installation of certain major drainage improvements within its 6,200 acre drainage area in Algiers which drainage area included the 411.84 acre tract owned by plaintiff. The negotiations commenced by plaintiff in April 1966 culminated in the Development Agreement of September 30, 1966.
Plaintiff bound itself by this agreement to donate to the Board out of its 411.84 acre tract a parcel of land measuring 9.8 acres for use as the construction site of the Board’s proposed new pumping station No. 13, and also to donate to the Board a servitude over another portion of its tract measuring 8.664 acres for use as part of the Board’s proposed new East Donner Canal. Plaintiff also granted to the Board, without cost, the exclusive privilege of using a certain access road through its property and bound itself to construct without cost to the Board a certain drainage canal through its tract. Finally plaintiff bound itself to sell to the Board an exclusive, unlimited, irrevocable and perpetual servitude in, to, through, under and over three described parcels of land measuring a total of 24.029 acres, composed of (a) Tract 1 (measuring 20.836 acres) for use as part of the Board’s new Nolan Canal; (b) Tract 2 (measuring approximately 3.130 acres) for use as part of the Board’s new East Donner Canal and/or suction basin for the Board’s proposed drainage pumping station No. 13; and (c) Tract 3 (measuring approximately 0.063 acres) for use as part of the Board’s new Nolan Canal and new East Donner Canal “at a fair and reasonable price, as may be agreed upon by the Board and the Developer, or, for just and adequate compensation, as determined by final judgment of a court of last resort * * * ”
The Board, on its part, obligated itself to construct its proposed new drainage pumping station No. 13 and to construct its new Nolan and East Donner Canals. The Board also bound itself to abandon and release to the developer, without cost, all of its right, title and interest in the existing Donner Canal presently occupying 9.016 acres of developer’s tract which was to be abandoned upon completion by the Board of its new East Donner Canal.
In short the Development Agreement provided mutually beneficial covenants looking toward better drainage of plaintiff’s 411.84 acre tract and the improvement of the Board’s overall drainage system. However we are primarily concerned here with the consideration to be paid by the Board for the servitude over the three parcels of land totalling 24.029 acres which the plaintiff obligated itself to sell to the Board.
In that connection the Development Agreement provided that the Board would submit to the developer (plaintiff) a written appraisal report and a firm offer to pay the value of the land as fixed by its *170 appraisers and in the event the developer should reject such offer and the parties could not agree upon “the fair and reasonable price therefor * * * then the Board and/or the Developer shall cause to be instituted, in the Civil District Court for the Parish of Orleans, State of Louisiana, * * * not later than December 1, 1966, an appropriate proceeding for expropriation of said land and final determination of the just and adequate compensation that shall be paid by the Board to the Developer. The Developer acknowledges the Board’s legal right to acquire by expropriation the * * * servitude * * * over these three parcels of property for use as parts of the Board’s drainage system, and the only issue to be presented in the litigation shall be the amount of compensation that the Board must pay to the Developer. The Board shall pay to -the Developer all money due hereunder * * * within thirty days after the final judicial determination vof the just and adequate compensation, that shall be paid by the Board to the Developer.”
The servitude in question was transferred by plaintiff to the Board by act before Jacob H. Morrison, Notary Public, dated September 30, 1966. In due course the Board submitted to plaintiff an appraisal report but the parties could not agree upon the “fair and reasonable price” to be paid for the property. The Board failed to institute expropriation proceedings prior to the December 1, 1966 deadline and plaintiff availing itself of the right granted by the Development Agreement filed this suit on December 21, 1966.
As stated in the Development Agreement “the only issue to be presented in the litigation shall be the amount of compensation that the Board must pay to the Developer.”
The 411.84 acre tract which plaintiff proposed to develop is located in lower Algiers. It is bounded on the north by General DeGaulle Drive (as extended eastward) ; on the east by Simpson Place (as extended southward) and the Intercoastal Waterway; on the south by the Orleans Parish-Plaquemines Parish line; and on the west by the west property line of Aurora Plantation. On its west side the tract is separated from the Lakewood Country Club by a strip of land approximately 200 feet wide belonging to Gan-dolfo.
The three small tracts constituting the 24.029 acres in question connect end to end with each other and together form (generally speaking) a strip 200 feet wide extending from north to south down the extreme west side of plaintiff’s property; the strip thence turns and runs east along the extreme south side of the property. That portion of the strip running down the west side of the property was destined to be used by the Sewerage and Water Board for its proposed Nolan Canal and the portion on the south side was destined to be used as the Board’s relocated Donner Canal. The Board’s proposed new pumping station was to be located on the 9.8 acres donated by the plaintiff for such purpose. When completed the project would connect with and furnish drainage from the Norman Canal on the north to the new pumping station on the southeast corner of plaintiff’s property from whence the water would be pumped into the Inter-coastal Canal.
Max Derbes, Jr. and Thomas B. Dupree testified as expert appraisers for plaintiff. Omer F. Keubel and Wallace Paletou were the Board’s experts.
Mr. Derbes testified that the highest present or foreseeable future use of plaintiff’s property was as an A-single family residential subdivision. He testified that in his opinion the fair market value of the 24.029 acres in. question as of September 30, 1966 was $348,420.50 or $14,500.00 per acre, and estimated the severance damages to the remaining property at $70,000.00, making a grand total of $418,420.00. No purpose would be served in discussing his or the other experts’ testimony in detail. *171 Suffice it to say Mr. Derbes made reference to, and discussed, several so called comparable sales which ranged in price from $6,500.-00 to $20,000.00 per acre, but laid most stress on the “Bocage Subdivision” which sold in November 1965 for $18,000.00 per acre. He adjusted this price to $14,500.00 per acre for plaintiffs property on account of the difference in size of the two tracts. Mr. Derbes also laid great stress on the proximity of plaintiff’s property to the Lakewood Country Club.
Mr. Dupree generally considered the same economic factors as Mr. Derbes and also relied heavily on the “Bocage Subdivision” sale and the proximity of the Lakewood Country Club. He appraised the subject property at $302,000.00 to which he added $44,660.00 for severance damages making a grand total of $346,660.00.
Mr. Keubel, expert for the Board, testified that he had appraised plaintiff’s tract “five times in the last seven years.” Economic factors which he took into account were basically the same as those used by plaintiff’s appraisers. He also used several so called comparables in ascertaining the market value of the property, many of them, including “Bocage”, being the same comparables used by Messrs. Derbes, Jr. and Dupree. Mr. Keubel testified that in his opinion the subject property had a value of $220,943.00 or an average of $9,206.00 per acre. In his opinion the remainder of the tract suffered no severance damage.
Mr. Paletou, basing his appraisal on the same comparables used by Mr. Keubel and the latter’s analysis thereof, arrived at a value of $206,911.00 for the subject property. Like Mr. Keubel he found no severance damage.
Mr. Keubel put his finger on the main issue in this case when he pointed out that in his opinion the vast difference in the values assigned by the two sets of appraisers was due to the fact that plaintiff’s appraisers considered the land as being in condition for subdivision purposes as of September 30, 1966. Mr. Keubel stated: “So I think the difference in the appraisers is in the appraisal premise. I was appraising the property as of September 30, 1966 and they appeared to have assigned different values, predicated upon the canal being in and being a contribution to the value of the land.”
The Sewerage and Water Board contends that as of September 30, 1966 the property was not ready for development as a residential development zoned “A” because as of that date the land was low, subject to flooding and fit only for pasturage or agricultural purposes.
Was plaintiff’s 411.28 acre tract fit for a residential subdivision from the standpoint of drainage on September 30, 1966 and could it have obtained the necessary approval of the Sewerage and Water Board without the new canals and new pumping station contemplated by the Development Agreement?
The record shows that the elevations of plaintiff’s tract commenced on its north side at 20 feet Cairo Datum (sea level of Cairo Datum being 20.43 feet) and decreased to 15.2 feet on its south side. The record further shows a 5% inch rain could be expected on the average of every two years and that such a rain would flood the lower part of plaintiff’s property to a depth of three feet. The record further shows that all of the comparables used by the expert appraisers lie north of plaintiff’s tract and have a much higher elevation, “Bocage” in particular being as much as 7 feet higher than the lower corner of plaintiff’s property.
Plaintiff’s witness, Richard Church, a civil engineer, who had done the engineering work on plaintiff’s proposed subdivision, testified that the land could have been drained under plaintiff’s original drainage plans without the drainage improvements contemplated by the Development Agreement. As we understand the testimony plaintiff’s *172 original drainage plan encompassed the digging of a canal through the tract along the proposed Dixie Freeway to connect with the old Donner Canal. However Mr. Church testified as follows in reply to questions by the Trial Judge:
“Q. Now, if the Sewerage and Water Board canal is not built, where will the canal you have dug drain into?
“A. This is an existing canal here, your Honor, this is the existing Donner Canal we enter into.
“Q. So that it is your opinion as an expert Civil Engineer, that if the Sewerage and Water Board had not bought that portion and had not or did not intend to dig that canal, that you could have still drained that entire area?
“A. With one qualification, your Honor, there’s not enough pumping station capacity in Algiers to handle the drainage. They need more pumping station capacity.
But that could be provided at the present location, as well as the proposed new location.” (emphasis supplied)
It should be noted here that the Dixie Freeway Canal shown on Mr. Church’s original drainage plan had not been dug as of September 30, 1966.
Plaintiff points to the fact that the Sewerage and Water Board approved its drainage plan on September 7, 1966, and its sewerage and water plans on September 21,1966; that the City Planning Commission approved its subdivision as a whole on September 26, 1966 and that plaintiff had actually commenced its street paving work in the northern section of the tract prior to September 30, 1966. However Mr. Edmund Hughes, superintendent of the Sewerage and Water Board, testified that if it had not been for the Development Agreement of September 30, 1966, the Sewerage and Water Board would not have approved the tract for a subdivision. He further testified that the drainage approval granted by the Board on September 7, 1966 was given on a verbal understanding that plaintiff would dig the Dixie Freeway Canal for the purpose of draining a sufficient amount of land so that plaintiff could start developing a portion of it. He testified however that the Board had to look “at the entire job as a complete drainage entity” and that without the Nolan Canal and other drainage improvements contemplated by the Development Agreement the Sewerage and Water Board would not have approved any type of project for plaintiff’s 411.84 acre tract.
Without the approval of the Sewerage and Water Board plaintiff could not obtain approval of the City Planning Commission for its proposed subdivision. The record shows that the approval of the City Planning Commission dated September 26, 1966 was a tentative approval only and that final approval was not given until many months after the Development Agreement had been executed and the subject property transferred to the Sewerage and Water Board.
We are of the opinion that as of the date of transfer of the subject property to the Board plaintiff’s 411.84 acres was unfit for a residential subdivision on account of the drainage situation and could not have been rendered fit for such purpose without the drainage improvements provided for in the Development Agreement or without filling in the land at a cost which would doubtless have been prohibitive.
We are therefore of the opinion that the appraisals made by plaintiff’s experts, who did not take the drainage situation into account, should be drastically reduced.
We are further of the opinion that the appraisals made by the Board’s experts are more nearly in line since they took into account the drainage situation in their *173 adjustment of the prices paid for the com-parables. However we are unable to say that the Trial Judge committed manifest error in fixing the value of the subject property at $265,358.40 being $45,415.00 higher than the amount of Mr. Keubel’s appraisal which the Board had agreed to pay and had deposited in the registry of the Court.
Plaintiff’s expert appraisers were of the opinion that the proposed new canals to be dug on the 20.029 acres transferred to the Board would cause severance damages to the remainder of plaintiff’s property. Mr. Derbes estimated this damage at $70,-000.00. Mr. Dupree’s estimate was $44,-660.00. They based their opinion and estimates on the theory that the proposed new Nolan Canal would separate the property from “the close proximity and highly desirable influence of the Lakewood Country Club” and on the fact that the presence of the canal will diminish the value of the lots bordering its right of way. They also took into consideration that a fence would have to be constructed along the canal. Defendant’s experts did not think any severance damage was suffered by plaintiff. The Trial Court granted plaintiff severance damages in the sum of $5,000.00 being the cost of the fence which plaintiff will be obliged to construct along the canal under requirements of FHA and the insurance companies.
In our opinion plaintiff is not entitled to any severance damages. In the first place plaintiff’s property is already separated from the Lakewood Country Club by the Gandolfo property. This 200 foot Gandolfo strip is low, wooded, undeveloped land and plaintiff enjoys no access to the club property across this land at the present time and it is problematical when such access will be available to plaintiff, if ever. We are furthermore of the opinion that any diminution in value suffered by the lots along the proposed Nolan Canal is offset by the special benefit[1] to plaintiff resulting from the Board’s surrender to plaintiff of all its rights in the old Donner Canal which divides the southern portion of plaintiff’s property and which is to be filled. Plaintiff not only profits by an increase in value of the lots which bordered this canal but gains the 9.016 acres occupied by the canal itself. Finally the cost of building a fence along the proposed Nolan Canal is offset by the fact that if this drainage project had not been necessary, it would have been necessary for plaintiff to erect a fence along both sides of the old Donner Canal.
The judgment appealed from provides for legal interest on the amount awarded plaintiff “beginning thirty (30) days after the date of this judgment.” According to the Development Agreement the Board was required to pay any judgment rendered against it “within thirty days after the date of final judgment that shall be rendered by the Court of last resort * * Consequently interest should be allowed only after thirty days from date of final judgment herein.
Plaintiff urges us to increase the expert witness fees awarded Messrs. Der-bes, Jr. and Dupree from $700.00 each to the sum of $1,250.00 each. The Trial Court has discretionary powers to fix such fees and we find nothing in the record to warrant us in disturbing his judgment in this respect.
Defendant prays for an award of expert witness fees to its experts in the same amount awarded plaintiff’s experts and that such fees be taxed as costs to be paid by plaintiff. We know of no legal basis for making such an award.
*174 For the foregoing reasons the judgment appealed from is amended by reducing the additional amount awarded plaintiff over and above the amount heretofore deposited in the registry of the Court from the sum of $49,415.40 to the sum of $44,415.40, and by providing that legal interest shall be paid on such latter sum from and after thirty (30) days from the date this judgment becomes final until such sum is paid. As so amended, and in all other respects the judgment appealed from is affirmed; costs of this appeal to be borne in equal proportions by plaintiff and defendant.
Amended and affirmed.

. Severance damage may be offset by special benefits. See City of Natchitoches v. Cox, La.App., 135 So.2d 302; State of Louisiana through Department of Highways v. Matise, La.App., 170 So.2d 709; State of Louisiana through Department of Highways v. Waterbury, La.App., 171 So.2d 790.