188 So.2d 653 (1966)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Sumter D. MARKS, Jr., Trustee for Elizabeth O'Connor Pratt, et al.
No. 2296.
Court of Appeal of Louisiana, Fourth Circuit.
July 5, 1966.
D. Ross Banister, Glenn S. Darsey, Ben C. Norgress, Baton Rouge, for plaintiff-appellant.
Phelps, Dunbar, Marks, Claverie & Sims, Sumter D. Marks, Jr., New Orleans, for defendants-appellees.
Before SAMUEL, CHASEZ and HALL, JJ.
*654 HALL, Judge.
The State of Louisiana through the Department of Highways filed suit on July 31, 1959 seeking to expropriate for highway purposes a strip of land through certain property held in the name of Sumter D. Marks, Jr. (as trustee for the actual owners) and obtained on the same date an ex parte order condemning the strip to it in full ownership (subject to reservation to the owners of the mineral rights in accordance with LSA-R.S. 9:5806) upon the deposit by it in the registry of the Court of the sum of $8,236.00, being the amount estimated by its appraisers as being just and adequate compensation for the land taken. No amount was deposited for severance damages.
Prior to the taking, the property owned by the condemnee consisted of a triangular portion of ground with the apex of the triangle at the northern extremity of the tract. The strip condemned to the Highway Department cuts in an east-west direction through the upper half of the triangle, resulting in there remaining to the owners a small triangular portion of ground lying north of the part taken, and a larger portion, trapezoidal in shape, lying to the south.
The original property contained 5.405 acres or 235,441.8 square feet; the portion expropriated contains 55,179.9 square feet, or 1.3 acres; the northerly triangular remainder contains 40,170 square feet, or 0.9 of an acre; and the southerly remainder contains 140,083.7 square feet or 3.2 acres.
The $8,236.00 deposited in the registry by the Highway Department represents approximately $0.15 per square foot for the property taken.
The condemnee withdrew the $8,236.00 deposit, without prejudice, and in due course answered plaintiff's petition claiming $1.00 per square foot, or a total of $55,179.90 for the property taken, plus an additional amount of $11,850.00 as severance damages to the triangular portion of the property left on the north side of the proposed highway. The condemnee's claim for severance damages consisted of $4,000.00 representing loss in value, plus $7,850.00 representing drainage damage to the northern remainder. No severance damages were claimed for the trapezoidal portion of ground left on the south side.
Following trial on the merits the District Judge fixed the value of the part taken by the Highway Department at the sum of $22,071.96 and the severance damages at $8,000.00, making a total of $30,071.96, and (taking into consideration the condemnee's withdrawal of the $8,236.00 deposit) rendered judgment in condemnee's favor for $21,835.96 plus legal interest from July 31, 1959 until paid.
The Department of Highways appealed. The condemnee answered the appeal praying that the severance damages allowed by the Trial Court be increased from $8,000.00 to the sum of $11,850.00.
The issues are: (a) the market value of the property expropriated, (b) the amount of severance damage, if any, to the north remainder property and (c) whether there were special benefits to the remaining properties which would off-set in whole or in part any severance damages.
The property in question is an unimproved tract situated in the City of Gretna near the dividing line between Jefferson and Orleans Parishes. It lies approximately one-half mile back (east) of the Mississippi River and approximately one-half mile south of the eastern approach to the Greater New Orleans Mississippi River Bridge. It is bounded on the south by a strip of land belonging to Julius F. Hotard et als. which separates it from Anson Street; on its westerly side by a strip belonging to the Southern Pacific Railroad which lies between the property in question and the railroad right of way; and is bounded on its easterly side by Oakdale Subdivision. The only access to the property (without crossing lands of others) *655 is a dedicated, but undeveloped street, which runs through the Oakdale Subdivision and stops at the eastern boundary of the subject property. The property as a whole is low and poorly drained.
At the trial each party produced two expert appraisers, those testifying on behalf of the condemnee being Omer F. Kuebel and Elmer G. Weigel; those for the Highway Department being John F. Carrere and Max Derbes, Jr. The condemnee, in addition, adduced the testimony of Alvin E. Hotard, a civil engineer and surveyor.
Mr. Kuebel, on behalf of the condemnee, testified that the highest and best use of the subject property was for industrial use. He testified that in his opinion the property taken was worth $0.45 per square foot or a total of $24,830.10 as of July 31, 1959, the date of the taking. He further testified that the remaining triangular strip suffered damages in the sum of $8,000.00 as the result of the highway construction $4,000.00 thereof being a 10% loss in market value due to its triangular shape and less desirability, and $4,000.00 due to the obstruction of drainage by the construction of the highway. Mr. Kuebel further testified that this small triangular plot had been offered for sale for two years but no offers to buy had been received.
Mr. Weigel assigned a value of $0.40 per square foot for the property taken for the highway or a total of $22,071.96. He further testified that great damage had been done to the triangular tract left north of the highway, the value thereof being reduced by $0.20 per square foot, or a total of $8,000.00. He ascribed the loss in value to its size and shape and to its inadequate drainage due to the highway construction.
Mr. Alvin E. Hotard was produced as an engineering expert on behalf of the condemnee. Mr. Hotard has lived in Gretna all of his life and has been City Engineer of Gretna for 27 years.
Mr. Hotard testified that the highway had been so constructed that the triangular strip of property remaining north of the right of way was thereafter completely blocked in from the standpoint of drainage. The elevation of the roadway itself was so high that the adjacent tract could not drain, and although catch basins had been built in connection with the street or highway they had no openings to tie into the adjacent property. He stated that the property had some drainage problems before construction of the highway but this could have been alleviated at a cost of $1,215.00, but testified that after construction of the highway the northern triangular portion could not be drained without first filling in the property. The cost of filling in the property and then providing drainage was given by Mr. Hotard as $7,440.00 for filling and $1,625.00 for drainage or a total of $9,065.00, which exceeds by $7,850.00 what it would have cost to drain the property before the building of the highway.
Messrs. Carrere and Derbes, Jr., testifying for the Highway Department, each placed a value of $0.15 a square foot or $8,236.00 for the property taken. These two witnesses had signed the estimate of just compensation annexed to plaintiff's petition. Both testified that no severance damage had been suffered by either the northern or the southern remainder. Mr. Derbes testified that the northern remainder not only did not sustain any damage or diminution in market value, but on the contrary, increased in value from $6,000.00 before the taking to approximately $20,000.00 after the taking, solely because of the construction of the highway which furnished highway frontage and access theretofore lacking. He also testified that the property had a drainage problem prior to the construction of the highway which the construction of the highway had a tendency to alleviate.
There are no controverted questions of law involved. It is well settled that the market value of the property taken is to be determined as of the time the estimated *656 compensation was deposited in the registry of the Court, but damage to the remainder of the property is to be determined as of the date of the trial. (See LSA-R.S. 48:453). The record reveals that the deposit was made on July 31, 1959, the highway was completed and accepted on August 29, 1960 and the trial took place thereafter on June 27, 1962. It is also well settled that the defendant has the burden of proving any value of the property taken in excess of the amount deposited and also the burden of proving severance damages. Plaintiff has the burden of proving any special benefits which might go to offset the severance damages.
Each party criticizes the comparables used by the other's experts. A detailed review of the comparables would be more confusing than enlightening and would serve no useful purpose. The Trial Judge accepted the testimony given by Mr. Elmer E. Weigel as to the value of the property taken, and we cannot say that he erred in so doing. Mr. Weigel fixed this value at $22,071.96. Mr. Weigel is a native and lifelong resident of the City of Gretna, has been in the real estate business in that city since 1936 and has had 15 years appraisal experience. He should be more familiar with Gretna properties and the values thereof than the other experts, and we say this without any reflection on, or disparagement of, their qualifications or opinions.
Mr. Weigel's testimony that the highway construction resulted in $8,000.00 severance damage to the triangular northern remainder was also accepted by the Trial Judge. Mr. Kuebel had likewise estimated the severance damage at $8,000.00, i. e. $4,000.00 loss in value by reason of its size and shape and $4,000.00 from obstruction of drainage.
On the contrary both Mr. Carrere and Mr. Derbes, Jr. were of the opinion that the northern remainder suffered no severance damage whatever.
Mr. Hotard, whose 27 years experience as City Engineer of Gretna was principally in relation to the city's drainage and street paving problems, made a survey of the property in question and gave a detailed explanation of the obstruction of the drainage of the north triangle resulting from the construction of the highway. His testimony leaves no doubt that the drainage problem which existed before was greatly magnified by the construction. The triangular northern portion became a virtual pool.
Mr. Hotard estimated the net cost of remedying the drainage situation at $7,850.00. Mr. Kuebel estimated the loss in value due to drainage obstruction at $4,000.00. Mr. Weigel's estimate of $8,000.00 severance damage included both loss of value from drainage obstruction and loss due to size and shape.
Our study of the record convinces us that the northern remainder did suffer severance damages and that the amount allowed by the Court therefor ($8,000.00) was neither inadequate nor excessive.
Plaintiff contends that the expropriating authority has a right to set off against damages otherwise allowable an amount representing the value of any special benefits to the owner's remaining property, citing City of Natchitoches v. E. D. Cox, La.App., 135 So.2d 302, and other cases. However, the burden is on the expropriating authority to prove the value of the special benefits. See State of Louisiana, Through the Department of Highways v. Matise, La.App., 170 So.2d 709. The only proof offered by the highway commission is the bare statement by Mr. Derbes, Jr. (without explanation) that the northern remainder suffered no damage or dimunition in market value but on the contrary increased in value from $6,000.00 before the taking to $20,000.00 after the taking solely on account of the highway construction which furnished frontage and access theretofore lacking.
*657 We cannot regard this statement as convincing proof. Our study of the record leaves no doubt in our minds that the northern remainder did suffer a diminution in market value as a result of the highway construction. And while it is undoubtedly true that frontage on the highway will result in some special benefit to the property, the question is how much benefit will result? In view of its small size (less than one-half the area of a conventional block) and the fact that while the base of the triangle fronts on the highway its sides slope rapidly back to form a triangle, we are unable to accept the bare statement of Mr. Derbes, Jr. that the highway frontage increased the value of the property by $14,000.00, which is more than a 200% increase.
For the foregoing reasons the judgment appealed from is affirmed; plaintiff-appellant to bear all costs of both Courts.
Affirmed.