LEMMON, Judge.
This expropriation suit involves the taking by the State of Louisiana, Department of Highways, of a strip of highway frontage from Mr. and Mrs. John S. Jacobsen’s corner property for the purpose of widening State Route La. 23 in Jefferson Parish from two to four lanes. After a trial on the merits, the district court rendered judgment fixing just compensation for the property taken and for severance damages to the remaining property.
The Department appealed, principally questioning the correctness of the trial judge’s method of determining severance damages. By answer to the appeal, the Ja-cobsens raised the issue of the adequacy of the awards for the property taken and for severance damages, and incidental issues as to interest and expert fees.
VALUE OF PROPERTY EXPROPRIATED
The corner tract, measuring 175 x 150 feet, was leased to a major oil company as a service station site. Three appraisers opined that the property’s highest and best use was as a serivce station; the fourth stated the highest and best use was for retail commercial purposes.
The expropriated strip, varying in width between 25 and 29 feet, extended across the entire existing highway frontage and contained 4,970 square feet. The only improvements located on the strip were concrete and shell surfacing, a pump island, and exterior lighting.
In determining the value of the land, all four expert appraisers used the market *889 data approach by studying recent sales of similar parcels in the area. The trial court accepted the estimate by one of the Department’s appraisers of $2.10 per square foot as being "consistent with comparable sales in the neighborhood and more reasonable than the amounts (values) placed on the property by the other appraisers,” particularly noting the “strained adjustments” applied by the Jacobsens’ two appraisers in reaching values of $2.65 and $2.70. The Department’s other appraiser valued the land at $2.30.
The determination of property value by a trial court is a finding of fact, to which great weight must be accorded on appellate review. State, Department of Highways v. Ragusa, 234 La. 51, 99 So.2d 20 (1958). However, to compare the value of properties in the area sold at points in time relatively near the date of expropriation with the value of the subject property, appraisers must adjust the effect on value of the time differential and of dissimilarities between the properties. This technique, largely based on informed judgment, was utilized by all four appraisers.
In our opinion the record does not support the valuation reached by the appraiser whom the trial judge accepted. One of his comparables near the subject property, sold over a year earlier at $2.03, had substantially less highway frontage and was thus not suitable for use as a service station. Two others, sold at $2.41 and $1.50 (the latter more than three years before the expropriation), were located north of the West Bank Expressway in “old Gretna,” a location favored by the appraiser because less land was available. Scarcity, however, is significant only if accompanied by demand. All other evidence indicated that most residential and commercial developments were taking place south of the Expressway and that southbound Highway 23 was a much better service station location, because of greater amounts of traffic generated by the new subdivisions and shopping areas and because this was the only through highway for traffic into Plaquemines Parish. Another of this appraiser’s comparables, located far south of the subject property and ultimately used for a service station, was sold for $2.08 more than four years before the expropriation. The only comparable property sold at a substantially lower price ($1.77, 18 months before the expropriation) required a considerable expenditure for fill and was admittedly a poorer location.
On the other hand, the Jacobsens’ appraisers relied principally upon the narrow frontage comparable, adjusted for time and for highway frontage, and upon a two-year old sale for $3.17 at the intersection of Gretna Boulevard, admittedly a better location. These appraisers supported their opinions with sales of service station locations in the general area, although not on Highway 23.
We believe the trial judge erred in accepting the Department’s appraiser’s valuation and rejecting that based on more reliable comparables and more reasonable adjustments. The evidence supports a valuation of at least $2.50 per square foot, and we set the award for the land taken at $12,425.00 (4,970 square feet at $2.50) ,[1] We further award the sum of $1,489.00 as compensation for the improvements on the land taken, as estimated by the Department’s appraiser. The total award for the property taken is $13,914.00.
SEVERANCE DAMAGES
All four expert appraisers estimated severance damages by valuing the entire property before and after the expropriation.

Value Before

The before value of the land forming the entire parcel (26,250 square feet at $2.-50) was $65,625.00.
*890 In determining the before value of the improvements, each appraiser used the cost approach, considering that approach best in this case where the land was properly used and the building was not depreciated beyond economic restoration. Each utilized a construction expert’s estimate of the replacement cost of the identical improvements and then applied an adjustment factor for value inferiority (or depreciation) of the older improvements. The adjusted relacement cost thus derived represented the estimated fair market value of the improvements at the time of the taking.[2]
As to replacement cost new, the trial judge rejected the testimony of the Department’s experts, a construction estimator and a contractor who built numerous service stations, and accepted that of the Ja-cobsens’ expert, the vice-president of a general contracting firm. We find no manifest error in this resolution of conflicting testimony.[3] The Jacobsens’ estimator, employing the same procedure as if he were submitting a construction bid, itemized and priced the complete labor and materials required and estimated the replacement cost at $71,600.00. Included in this sum, however, was $11,266.00 of service station equipment, which was owned by the lessee. Furthermore, the estimator included the sum of $3,000.00 as the cost of demolishing the old building. While this item is appropriately considered later in the appraisal process, demolition is not properly considered in determining replacement cost new. Thus, the total of these sums ($14,266.00), as well as the 12% overhead and profit applied thereto ($1,711.92), must be deducted, and we determine the proper replacement cost new to be $55,622.08.
The Department’s primary complaint on appeal is that the trial judge failed to allow for the present deficiency in the value of the old building as compared to the value of the hypothetical new building. All appraisers recommended that same amount, representing depreciation or value inferiority, be deducted from the replacement cost new.
The concrete block building, approximately fifteen years old at the time of taking, had been maintained in good condition. The appraisers estimated depreciation applicable to the improvements as follows:
Department # 1 — 60% depreciation, 12 years of effective life used, about eight years before investor would have remodeled extensively (because of high land value).
Department #2 — 40% accrued depreciation, no explanation.
Jacobsens #1 — 44% depreciation on building, 16 years old, remaining useful life of 20 years; 30% depreciation on some materials, fixtures and equipment.
Jacobsens #2 — 50%, effective age of 12.5 years, remaining economic life of 12.5 years.
From the evidence and the numerous photographs, we belie the building and other improvements, gv..,e: lly taken together, has an effective age of 12 years and a remaining useful economic life of 18 years, and therefore utilize an adjustment factor of 40% for all imprc ments.[4]
*891 Thus, our recapitulation of the value of the land and improvements just-before the taking, without considering any enhancement due to the purpose of the taking, is:

Vahte After

Three appraisers agreed that the expropriation rendered the building useless and therefore valueless, inasmuch as there was insufficient space remaining between the new right of way and the building to place a pump island. The other appraiser suggested moving the pump island to the side street, but we agree with the trial judge that moving the pumps away from the highway and the main stream of traffic was not a reasonable remedy. Therefore, we conclude, as did three appraisers and the trial judge, that the improvements in effect had zero value after the taking, except for the value of salvageable items. The Jacobsens’ estimator valued certain salvageable items, such as doors, windows and fixtures (not including salvageable equipment owned by the lessee), at a cost new of $2,660.00. From this must be deducted the general depreciation factor of 40%, or $1,064.00, and the cost of removing the items, estimated at $315.00. We therefore set the value of the salvageable improvements after the taking at $1,281.00.
Thus, virtually the entire value of the property remaining after the taking was in the land. However, the land could not be put to its highest and best use by the owner or an investor, until the building was removed. While still standing, the building constituted a detriment to the remaining land, a detriment equivalent to the cost of its removal.
The Department argues that the cost of demolishing the building is not a compensable item of severance damages. This contention oversimplifies a complex issue. Severance damages are generally measured by taking the difference between the fair market value of the property immediately before the taking and the reduced value of the remainder on the date of trial. State, Dept. of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969); State, Dept. of Highways v. DeRouen, 256 La. 947, 240 So.2d 717 (1970). At this point in the appraisal procedure, we are attempting to determine the value of the entire property remaining after the taking, *892 which is merely a step in the assessment of severance damages.
The presence of the worthless building actually decreases or diminishes the value of the land remaining. Demolition of the useless building is necessary before the remaining land can be available for its highest and best use, and before the land can command its highest sale price.[5]' We must therefore deduct the cost of demolition from the value of the land remaining after the taking.
In determining the after value of property for the purpose of setting severance damages, we must consider not only the decrease in value caused by the taking, but also the special benefits accruing to the remaining property by virtue of the project which necessitated the taking of a portion of the original property. In effect, severance damages are reduced by the amount of special benefits. See State v. Central Realty Inv. Co., 238 La. 965, 117 So.2d 261 (1960). The Jacobsens’ appraisers, while admitting the property benefitted from the project, classified these benefits as general benefits, for which no setoff is allowable.
General benefits are those which arise from the fulfillment of the public object which justified the taking, while special benefits are those which arise from the particular relationship between the subject property and the public improvement. See Dakin and Klein, Eminent Domain in Louisiana Ch. Ill, § 3D (1970) ; 3 Nichols, The Law of Eminent Domain, § 8.6203 (3rd ed. 1973). A special benefit to one property does not become general merely because the same benefit accrues to other properties adjacent to the public improvement. La. Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941). The benefit accruing directly to each property is special to that property.
While in the present case non-abutting properties in the vicinity received a general benefit from the improvement, the Jacobsens’ property and other commercial properties bordering the highway each received a special benefit not shared by the neighboring properties which were not so situated. Thus, we conclude that a special benefit accrued to the property in the present case as a consequence of widening the highway on which the commercial property fronted from two to four lanes.[6]
The burden of proving the value of the special benefit, however, is on the expropriating authority. State, Department of Highways v. Marks, 188 So.2d 653 (La.App. 4th Cir. 1966). The one Department appraiser who testified as to special benefits based his opinion on the fact that widening to four lanes makes Highway 23 a major artery, with no competing four lane roads in the area. He also cited a sale of vacant land one block from the subject property, which sold for a 19% higher price (on a square foot basis) than the earlier sale price of a parcel across the street.
The two parcels were not only dissimilar in size from each other and from the subject property, but also were sold two years apart, which somewhat explains the increased price. Furthermore, the Jacobsens’ appraisers in discussing special benefits pointed out the extensive residential and commercial developments in the area substantially contributed to the enhancement of property values in the area, and that those down-river developments actually warranted the highway widening project.
Under these circumstances, while we agree that special benefits did accrue to the subject property, we do not believe the evidence justifies an offset for special ben *893 efits of more than 5% of the before value of the remaining land.
Thus, the after value of the entire property is:

INTEREST
The Jacobsens contend they are entitled to legal interest on the award of just compensation (in excess of the amount deposited) at the rate of seven per cent.
In State, Dept. of Highways v. Terrace Land Co., Inc., La., 298 So.2d 859 (decided after the trial court judgment in the present case), the Supreme Court held that Act 315 of 1970, although specifically amending only C.C. arts. 1938 and 2924 to increase legal interest from five to seven per cent, was also intended to increase the rate of legal interest in R.S. 48:455 and similar statutes, since the 1970 act repealed all laws contrary thereto. Accordingly, legal interest will be awarded on the judgment at the rate of seven per cent.
EXPERT FEES
The Jacobsens contend the trial court only awarded expert fees for preparation and omitted a fee for the experts’ court attendance. While expert' fees may be awarded both for preparatory work and for appearance in court, there is nothing in the record or the judgment which indicates this was not done. The Jacobsens’ appraisers stated their fees for preparatory work were $1,500.00 and $1,000.00 respectively. The Department stipulated a court appearance fee of $150.00 per day for the four days consumed by the trial. The trial court then awarded expert fees of $1,500.-00 each, without indicating how the amount was determined.
We cannot infer that the trial court did not consider court appearance time. Neither can we find that the fee set by the court was so inadequate as to constitute an abuse of discretion.
DECREE
The judgment of the trial court is amended in part and recast as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the *894 amount of just compensation to be paid to defendants John Sidney Jacobsen and Mary Irene Hertz Jacobsen be and hereby is fixed at FORTY-FOUR THOUSAND, EIGHT HUNDRED FIFTY-SEVEN AND 25/100 ($44,857.25) DOLLARS, subject to a credit of EIGHTEEN-THOUSAND, THREE HUNDRED SIXTY-TWO AND NO/100 ($18,362.00) DOLLARS, together with legal interest thereon at the rate of seven (7%) per cent from August 14, 1970 until paid, and all costs of these proceedings, including expert fees of $1,500.00 to Omer F. Kuebel, $1,500.-00 to L. X. Lamulle, and $1,200.00 to August J. Barbier, Jr.
As amended, the judgment is affirmed.
Amended in part and recast, and affirmed.

. Samuel, X, would increase tlie award to $2.65, while Redmann, J., would affirm the $2.10 award.

.Constitutionally mandated “just compensation” has been held under most circumstances to be the fair market value of the property just before the taking without any enhancement by virtue of the project for which the property is expropriated. State v. Hayward, 243 La. 1036, 160 So.2d 6 (1963). This measure often leaves the owner without full compensation (from his viewpoint), since he would not otherwise have sold the property if offered fair market value, particularly in cases such as the present, where the owner has a perfectly suitable building for present purposes, but in order to stay in business is forced to build a new building at current prices. Neve' heless, present law, as defined by the juri udence, only requires compensation at the objective standard of the present market value of the old building, and perhaps this is the most practical measure of indemnity at the command of the law. See I Bonbright, Yaluation of Property, Ch. 13 (1937).

. Redmann, J., would reject the Jacobsens’ estimator’s opinion and would accept that of the Department’s exjjerts.

. Samuel, J., dissents on this point.

. This is particularly true when the before value of the land is relatively high in comparison to the before value of the improvements.

. Samuel, J., dissents on this point.