315 So.2d 784 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Anthony L. BROWNING.
No. 10297.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
*785 E. Drew McKinnis, Baton Rouge, for appellant.
Jerry F. Davis, Baton Rouge, for appellee.
Before LANDRY, BLANCHE and YELVERTON, JJ.
BLANCHE, Judge.
Defendant-appellant, Anthony L. Browning, appeals from a judgment of the Nineteenth Judicial District Court which awarded him $12,483 less $6,489 already paid into the registry of the court, together with legal interest on the balance. The sum awarded represents just compensation for land expropriated for state highway use. Expert witness fees were set at $1,250 and were taxed as costs to the *786 plaintiff. The plaintiff has neither appealed nor answered the appeal.
The instant taking occurred pursuant to State Project No. 254-02-17 which widened to four lanes State Route Louisiana 37, commonly known as Greenwell Springs Road, in East Baton Rouge Parish. The total taking amounted to 3,141 square feet from the front portion of defendant's service station, together with improvements thereon.
The State offered $1,797 for land and improvements and $4,692 for damages to the land for a total of $6,489. The defendant refused said offer and that sum was deposited in the registry of the court. Thereafter, the taking occurred on January 20, 1972, pursuant to Part XVIII of Title 48, Revised Statutes of 1950.
The subject tract is located five and one-half miles east of the Airline Highway where Sullivan Road intersects Greenwell Springs Road. It is comprised of 9.33 acres and is irregular in shape, fronting 202.18 feet on Greenwell Springs Road but is much wider in the rear. The service station fronts on Greenwell Springs Road where it has been for approximately twenty-five years. One hundred feet to the rear of the station is defendant's frame dwelling, and all parties agree that it was not affected by the taking. While the service station site is commercial, the rear of the tract is considered rural residential or agricultural.
The station is of varying construction, as the defendant improved the property with the passage of time. The entire front is brick block, however, the rear of the building is of a less substantial nature. The entire structure totals approximately 2,100 square feet of floor space.
The station's only gasoline pump island lay within the expropriated part and all parties agreed that as a result of the taking, the station was rendered useless. The trial of the matter centered around the value of the land and improvements taken and the severance damages which resulted therefrom.
Both the plaintiff's and defendant's experts agreed that the frontage on Greenwell Springs Road had a different use potential from the rear land. All experts used a front land-rear land approach or a modification thereof.
The plaintiff's expert, Carl J. Snyder, used three comparable sales and concluded the front two acres of the subject tract were worth $7,500 per acre or 17 cents per square foot at the time of the taking. Therefore, he valued the 3,141 square feet taken at $534.
$1,646.80 was his estimate of the replacement value of the equipment located within the pump island. He then depreciated those improvements by two-thirds, leaving $549 as the value on the day of taking. Accordingly, he concluded the total compensation due for the land and improvements was $1,083.
Concerning severance damages, Snyder utilized the testimony of George B. Schoonmaker, the State's expert in the field of maintenance and construction of service station retail outlets, and determined the cost to build a similar service station and install the appropriate equipment was $22,127.06. This value was depreciated by two-thirds and $7,377.16 was estimated as the value of the station at the time of taking.
Utilizing $1,000 per acre as the value of the rear seven acres, and rounding off his figures, he concluded the total land value at the time of taking was $22,330. Therefore, the value of the land plus the physical facilities at the time of the taking totaled $29,700.
To determine the value of the total land and improvements after the taking, he valued the remaining improvements at zero, and subtracted $2,000 which was the estimated cost to demolish the building, from the value of the naked land and determined *787 that the total value of the property affected by the taking was $20,250. The value of the land plus improvements after taking was then subtracted from the value before taking, and he concluded the property was damaged to the extent of $8,567.
Snyder then added the above severance damages to the value of the part taken and arrived at a total just compensation due of $9,650.
The plaintiff's other appraiser, Alvin K. Seago, agreed basically with Snyder's approach and he also used three comparables, though different from Snyder's, to arrive at the value of the land at the time of taking. He estimated the front one acre to be worth $16,174 and the rear eight acres, $1,000 per acre. For the 3,141 square feet taken, he arrived at a value of $1,166 and then added $440 as the depreciated value of the pump island improvements and determined that the value of the land and improvements actually taken was $1,606.
Regarding severance damages, Seago estimated the total land and improvements to be worth $44,811 before, and $34,412 after the taking. Therefore, by subtracting the value after taking and the $1,606 value of the land and improvements actually taken he arrived at a figure of $8,793 as severance damages.
His total compensation, therefore, was $10,399, arrived at by adding the $8,793 severance damages to the $1,606 value of the land and improvements actually taken.
The defendant's expert. Norbert J. Schexnayder, Jr., utilized three comparables which were sales for convenience stores and service stations in the general vicinity of the subject tract and arrived at a value of one dollar per square foot for the 3,141 square feet of land actually taken or $3,141. He then valued the depreciated improvements within the pump island at $1,650, added the $3,141 land value, and concluded the total land and improvements actually taken were worth $4,800.
Regarding severance damages, Schexnayder utilized one dollar per square foot for the entire tract and arrived at a total land value of $40,850. To replace the station proper, he estimated a cost of $28,729. He then applied variously thirty, forty and fifty percent depreciation to the different groups of improvements, which resulted in a value of $15,600 for the station and pump island at the time of taking. This figure, added to the land value, gave a total of $56,450 for the entire land and improvements. To arrive at the value of the improvements, Schexnayder used his own estimation and not the estimate of a service station construction expert as did the plaintiff's appraisers.
Regarding the value of the entire tract after taking, Schexnayder indicated that the value of the service station was completely lost as a result of the taking and those improvements, therefore, would require removal from the property. In this conclusion, all the experts for both sides agreed. It was the concensus of all that the service station building could no longer be utilized for any commercial enterprise as it lacked adequate distance from the road and in any event removal of the buildings would be necessary in order to reconstruct a new commercial enterprise thereon. Therefore, to arrive at the value of the entire tract after taking, he did not consider the value of the station.
To arrive at severance damages, he added $4,200 as the cost of demolition of the building and adjacent concrete slabs to the value of the remaining improvements ($15,600 - 1,650 = $13,950) and concluded that the total damage to the property was $18,150. To these severance damages he added $4,800 for the land and improvements actually taken, and arrived at $22,950 as just compensation.
The defendant's other appraiser, Eugene G. Rogillio, opined that the service station site which he regarded as being 200 feet in width and 215 feet in depth, had a value of $60,000 or approximately $1.50 per square *788 foot at the time of the taking. He based this on general knowledge of real estate in the area without any specific reference to comparables except a reference to a sale to Pak-A-Sak for $20,000. Regarding that sale, he testified that the subject tract was more valuable. He did not testify concerning severance damages.
The trial judge found as follows:
"The Court believes that the value of the land taken has been established to be $1.00 per square foot. Its highest and best use was for a service station or convenience store with enhanced value because of its location.
"The Court accepts the figure of $549.00 as the value of the improvements taken. Plaintiff's experts documented well their replacement costs and their estimates of depreciation and obsolescence.
"The Court is required, too, to accept the figure of $8,793.00 as the amount of severance damages. Messrs. Synder and Seago explained their reasoning logically and well. One of defendant's experts did not testify at all in regard to severance damages and the other's testimony was not so well reasoned and documented as was that of plaintiff's experts." (Written Reasons for Judgment, Record, p. 34)
He then awarded the sum of $12,483 plus a credit for the deposit of $6,489, together with interest on the balance.
In expropriation cases much discretion is granted to trial judges in weighing testimony of experts, and findings of value based upon such evidence will not be disturbed unless clearly erroneous. State, Department of Highways v. Spillman, 276 So.2d 905 (La.App.1st Cir. 1973); State, Department of Highways v. Hickman, 277 So.2d 525 (La.App. 3rd Cir. 1973).
After a thorough reading of the evidence presented at trial by the experts for both sides, this Court is convinced that the finding by the trial judge that the subject tract was valued at one dollar per square foot at the time of taking is not manifestly erroneous.
Also, the evidence substantiates a finding of $549 as the value of improvements taken, and it likewise will not be disturbed.
Regarding severance damages, it is obvious that the trial judge adopted the determination of $8,793 by plaintiff's expert Seago. Seago, however, did not consider the cost of removal of the obsolete service station building and the adjacent concrete slabs as did the plaintiff's other expert Snyder and also the defendant's expert Schexnayder. As noted previously, all experts agreed the building was functionally obsolete and was no longer useful as a service station, and only marginally useful for other commercial endeavors. Even Seago, who did not figure a cost for the demolition, acknowledged in his testimony that if such demolition became necessary he would consider that the cost thereof would be a factor to consider in awarding severance damages.
Schoonmaker, the plaintiff's expert concerning repair of service stations, testified from memory that he received a bid of $2,000 to demolish and remove the improvements from the property whereas the defendant's expert, Charles C. Cloy, a general contractor, testified that the cost of removal would be $4,200.
We are of the opinion that the cost of removal of the building which had become obsolete as a direct result of the taking should be an additional item of severance damages. The evidence preponderates that the taking rendered the site completely unsuitable for the operation of a service station, nor could it be profitably operated as a quick food or convenience store in view of the fact that the taking eliminated virtually all of the parking area in front of the building. These factors, coupled with the necessity of removing the building and concrete slabs if the owner *789 decided to rebuild the station farther back from the new right of way, convince this Court that severance damages are due for the demolition of the station. Cf. State, Department of Highways v. Jacobsen, 306 So.2d 886 (La.App. 4th Cir. 1974).
As previously noted, the trial judge awarded severance damages based upon the testimony of the defendant's expert Seago who did not utilize demolition costs. We conclude this was error. The defendants submitted direct testimony which established that the demolition would cost $4,200. We, therefore, add that cost as an additional item to the $8,793 of severance damage found by the trial judge and award a total of $12,993.
In preparation for the taking, the State's experts appraised the subject tract in June, 1971, and when the defendant refused to accept their offer, the experts reappraised the tract at the time of taking, January, 1972. The severance damages on the January appraisal were approximately $8,500 whereas in June, seven months prior, they were estimated to be $4,000. The defendant attempted to cross-examine the State's expert Seago concerning the large difference in the two reports but was limited in the extent of said examination by the trial judge. The defendant contends this was error.
Even assuming that the full extent of cross-examination requested by the defendant were granted by the trial judge, the results to be gained thereby would only be speculative. Seago asserted that he could not be sure that the figure used by the State was, in fact, derived from his report, as other appraisals by other experts were also submitted. The expert did not have a copy of his June, 1971, report at the trial and was forced to respond from memory to the questions of the defendant.
The appraisal at the time of taking must stand or fall on its own merits, and the trial judge obviously decided that cross-examination concerning the prior appraisal would not impeach the credibility of the expert's report offered at trial and, in fact, he eventually accepted Seago's determination of severance damages as his own.
The trial judge contended the valuation at the time of taking was the only concern of the court, and the prior report was valuable only for impeachment purposes. Accordingly, he did not abuse his discretion by limiting cross-examination concerning the prior appraisal.
The defendant argues that the trial judge's fixing of Schexnayder's expert fee at $750 is too low, as Schexnayder's actual fee was $1,150. In fixing an appraiser's fee in expropriation proceedings, considerable discretion is vested in the trial judge and his determination will not be disturbed on appeal absent a clear showing of abuse. Spillman, supra. The defendant has not shown the award was an abuse of the great discretion of the trial judge, and, therefore, the award is affirmed.
For the foregoing reasons, the award by the Nineteenth Judicial District Court of $3,141 for the value of land expropriated and $549 as the value of improvements thereon to the defendant, Anthony L. Browning, pursuant to Louisiana State Project No. 254-02-17 is hereby affirmed.
The award of $8,793 as severance damages is hereby amended by the addition of $4,200 representing the cost of demolition of the improvements remaining on the property after the taking.
It is, therefore, ordered, adjudged and decreed that severance damages due to the defendant are fixed at $12,993. Accordingly, the total award for land taken and improvements thereon plus severance damages is hereby fixed at $16,683.
*790 The award of $1,250 expert fees taxed as costs to the plaintiff is hereby affirmed. Additionally, the plaintiff is cast for all costs of these proceedings as may legally be assessed against the State of Louisiana.
Amended and as amended, affirmed.