975 So.2d 765 (2008)
STATE of Louisiana, DOTD, Plaintiff-Appellant
v.
COLE OIL AND TIRE CO., INC., Defendant-Appellee.
No. 43,030-CA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
Bernard L. Knobloch, Jr., for Appellant.
Anna E. Dow, Martin S. Sanders, III, Baton Rouge, for Appellee.
Before STEWART, GASKINS and LOLLEY, JJ.
STEWART, J.
The State of Louisiana, through the Department of Transportation and Development (hereafter "DOTD") appeals a judgment awarding Cole Oil and Tire Company, Inc., (hereafter "COT") a total $372,642, plus costs and attorney fees, as just compensation for an expropriation of land to widen a highway. Finding no reversible error, we affirm the trial court's judgment with an amendment of the expert fees.

FACTS
COT operated a bulk fuel plant in Jonesboro, Louisiana, alongside LA-US 167 on a triangular tract of land with a railroad right of way running along the rear of the tract. On March 10, 1997, DOTD filed a petition to expropriate part of the property (16,243 square feet) to widen the highway and deposited $10,267 into the registry of the court as just compensation for the taking. COT answered the petition on April 18, 1997, to demand total compensation of $460,000. COT claimed that the taking damaged the remainder of the property by rendering it unfit for operations of a bulk fuel plant due to the proximity of the fuel storage tanks to the highway right of way. Only by reconfiguring the site would COT be able to continue operations at its Jonesboro location.
Almost ten years after the taking, the issue of compensation due COT went to trial. For the intervening procedural history of this matter, which is not directly related to the issue before us now, see State of Louisiana, DOTD v. Cole Oil & Tire Co., Inc., 36,122 (La.App. 2d Cir.7/17/02), 822 So.2d 229, writ denied, 2002-2325 (La.11/15/02), 829 So.2d 436.
*767 At trial, Albert F. Cole, the majority shareholder of COT, testified that the taking made the site unsafe for continued operations of the bulk fuel plant and that he could no longer obtain insurance for operating the plant. Apparently, the taking placed the plant operations in violation of a National Fire Protection Act (NFPA) guideline that required a distance of at least 25 feet between tank car loading and uploading facilities dispensing Class I liquids and the nearest line of adjoining property that can be built upon. Cole testified that the loading dock was within 13 feet of the highway right of way line as shown by markers that DOTD had put down and the placement of a telephone pole. Though he had not surveyed the distance, he stated that his lawyers and others had measured it. Cole asserted that because he was unable to get insurance for the operations, he closed the tanks. However, the date of closure was not clearly established. Records for the Department of Environmental Quality ("DEQ") showed that the tanks were out of service by 1998.
Cole also testified that the tanks could not be moved back on the property due to the presence of a railroad right of way and the fire danger posed by sparks from the railroad tracks igniting the overgrown brush on the right of way. He claimed that the only way to continue operations on the site would be to demolish the existing improvements and rebuild in a new configuration that would satisfy all applicable safety standards.
The need to and manner of reconfiguring the site was determined by engineers consulted by COT's real estate appraiser, James A. Young. According to Young, the cost of demolishing the existing facilities and rebuilding the site would total $403,068 as of the date of trial. His appraisal of compensation for the taking only amounted to $10,512. Young admitted that he did not determine the distance from the loading rack to the highway right of way and that he relied on the report from engineers with Jones Brothers Co., Inc., in making his appraisal. The Jones report did not include specific information about why the site would have to be reconfigured. It stated only that the proposed layout would be in compliance with current codes and regulations applicable to fuel facilities and adjacent rights of way.
Ronnie Rabalais, an expert in construction costs, testified on behalf of DOTD, which asked him to determine the replacement costs of improvements on the site and whether changes were needed for operations to continue. Rabalais opined that the loading racks were set back far enough from the highway right of way to meet regulatory requirements. He also believed that the NFPA setback requirements would not apply to the highway right of way, which was not an area on which anything would be built. COT objected to this testimony as outside of Rabalais's area of expertise, and the trial court sustained the objection. Rabalais testified that COT could continue operations on the site without rebuilding, and he referred to other bulk fuel plants he had seen or inspected that were located closer to highway or railroad rights of way. However, he did not know whether these facilities were insured. Finally, Rabalais estimated replacement costs, if owed, to be $326,700 as of the date of the taking.
Another DOTD witness from the petroleum marketing industry, John Fontenot, also testified that COT could continue operating under the present conditions. But Fontenot said he would not operate without insurance.
Finally, DOTD presented its own appraiser, Richard K. Moore, who had done an initial appraisal report prior to the taking and a second report in 2004. Moore's *768 initial report determined the market value of the property taken to be $10,543, and the severance value of the remaining property to be $8,500, for a total of $19,043. His 2005 report updated these figures to $15,300 for the property taken and $9,000 for the severance damages for a total of $24,300. These figures were based on the assumption that setback requirements were met. His calculation of replacement costs for the improvements, as indicated in his appraisal report, totaled $326,700 as of November 19, 2004.
After considering the testimony and documents offered into evidence, the trial court ruled in favor of COT, awarding it $15,300 for the value of the property taken, $326,700 in replacement costs without depreciation for the improvements, $20,642 for demolition, and $10,000 for grading and rebuilding preparations. These awards totaled $372,642, and with the $10,267 already paid by DOTD, left $362,375 remaining to be paid with legal interest from the filing date of COT's answer. The trial court also awarded attorney fees totaling $90,593.75, and costs associated with COT's appraiser, James Young, totaling $27,400. DOTD has appealed this judgment.

DISCUSSION
DOTD first argues that the trial court erred in overruling its hearsay objections to two letters offered by COT in support of Mr. Cole's testimony. The first letter, which is dated March 15, 1996, was written to Mr. Cole from COT's insurer, Federated Insurance, regarding an inquiry by its Louisiana consultant about the distance requirements applicable to loading and unloading tank vehicles. The letter indicates that the changes at the Jonesboro location would put the transfer point within 15 feet of the highway right of way and that the NFPA guidelines, which Federated follows when determining insurability, requires a distance of 25 feet for Class I liquids. However, the letter does not state whether insurance would be denied to COT.
The second letter, dated September 5, 1996, was written to DOTD by H.R. Perry of Perry and Sons, Inc., in support of COT's contention that it could no longer operate on the Jonesboro site because of the taking.
We agree with DOTD that both letters are hearsay and should not have been admitted into evidence. It was not shown that any hearsay exception applied. COT argues that the letters were not admitted to establish the truth of the matters contained in them but to show what Mr. Cole believed at the time. However, it is clear that the letters were offered to bolster Mr. Cole's testimony that he could not obtain insurance and that the taking rendered the plant useless due to the NFPA distance guidelines. In this sense, they were offered to establish the truth of COT's claims and are inadmissible hearsay.
Though these letters were improperly admitted, an "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." La. C.E. art. 103(A); State Farm Mutual Automobile Ins. Co. v. Little, 34,760 (La.App. 2d Cir.6/20/01) p. 4, 794 So.2d 927, 930 and cases cited therein. Because other evidence supports the trial court's judgment, we cannot say that these letters were persuasive to the outcome of the case such that the substantial rights of DOTD were affected by their improper admission.
DOTD argues that COT did not prove that the loading rack was less than 25 feet from the right of way line, that the NFPA guideline was violated, or that the taking required relocation of the loading *769 rack for COT to obtain insurance. For these reasons, DOTD asserts that the trial court erred in awarding COT costs to reestablish operations and that the award should be reduced to $5,033 to reflect the value of the part taken ($15,300) less the deposit of $10,267.
When property is taken for a public purpose, the owner is entitled to just compensation. La. Const. Art. I, § 4; State, DOTD v. Griffith, 585 So.2d 629, 631 (La. App. 2d Cir.1991), writ denied, 589 So.2d 1055 (La.1991). The owner is to be compensated to the full extent of his loss. La. R.S. 48:453(C); Griffith, supra. While the market value of the property may suffice to fully compensate the owner, unusual situations might entitle the owner to replacement value in an amount necessary to reconstitute the property. Griffith, 585 So.2d at 632. Two cases comparable to the matter at hand are examples of situations warranting additional compensation to reconfigure property after a taking.
In State, Department of Highways v. Randolph, 170 So.2d 397 (La.App. 3d Cir. 1965), the taking of a strip of land adversely affected a business that operated a gas station and restaurant and sold beer. Because of the taking, the gasoline tanks had to be removed, and there was no longer sufficient parking. Severance damages were awarded to the owner to compensate for the damage to the remainder of the property caused by the taking.
In State, Through Dept. Of Highways v. Browning, 315 So.2d 784 (La.App. 1st Cir. 1975), the owner of a gas station was awarded severance damages after a taking rendered the station useless. The only gasoline pump was located on the expropriated land, and the taking left inadequate distance from the road to allow the building to be used for commercial purposes. The experts agreed that the value of the service station was lost and that removal of the improvements would be necessary in order to rebuild the station.
When expert testimony is required in expropriation cases, the trial court's evaluation and weighing of the expert testimony and factual findings on the values of property will not be disturbed on review in the absence of manifest or clear error. Griffith, supra; Browning, supra. Where conflict exists in the testimony, the trial court's reasonable evaluations of credibility are not to be disturbed on appeal; where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989).
DOTD argues that there was no evidence that Mr. Cole or anyone working for COT actually measured the distance from the loading rack to the highway right of way and that DOTD's survey showed the distance to be 25 feet, as established by the testimony of Mr. Rabalais.
Mr. Cole testified that the loading dock was 13 feet from the right of way, but he could not name the exact person who did the measurement. He recalled that it was done by his attorneys and others working on the case. The trial court could have reasonably believed Mr. Cole's testimony, particularly in light of the proposed reconfiguration obtained by COT's appraiser to place the plant in compliance with codes and regulations applicable to fuel plants and rights of way. Neither Rabalais's testimony nor DOTD's topographic survey fully contradicts Mr. Cole's testimony. The survey has two measurements from what appears to be the loading dock area, including the concrete area around it. One measurement is 24 feet, 7 inches, and the other is 14 feet, 11 inches. The right of way line appears to slope slightly. The effect of the slope and the points used for *770 the measurement lead to different results. Rabalais's testimony confirms this problem, though he believed that the total area was in the range of 25 to 26 feet and was close enough to satisfy the guidelines. In light of the conflicting evidence, the trial court could have determined that a distance of less than 25 feet existed between the loading dock area and the right of way. This finding is not manifestly erroneous.
DOTD also asserts that the NFPA does not apply to highway rights of way. However, the only testimony on this point was that of Mr. Rabalais, who was accepted as an expert in construction cost estimates. The trial court sustained an objection to Rabalais's testimony on the meaning of the NFPA on the grounds that he was not an expert on regulatory matters. We find no error in the trial court's failure to find credible Mr. Rabalais's testimony on the meaning of the distance requirements in the NFPA.
DOTD also disputes the claim that the taking required relocation of the loading rack in order for COT to obtain insurance. DOTD argues that COT's closing did not occur until after the highway construction was underway and was not due to lack of insurance.
Mr. Cole testified that he could not obtain insurance due to the effect of the taking on his remaining property. His testimony was uncontradicted. While the record does not show that COT immediately ceased operations upon the date of the taking, Mr. Cole testified that the loading dock was taken out of use at the time highway construction commenced, which he explained further as "before they completed the highway over to our area where we couldn't operate any longer." Presumably, the highway construction did not even begin until some months after the taking occurred. There was no showing that COT acted improperly or closed for reasons other than safety issues resulting from the taking.
The preponderance of the evidence supports COT's claim for additional compensation to make it whole. The trial court weighed the conflicting evidence, including the experts' appraisals, and its judgment has not been shown to be manifestly erroneous. We find no reason to reverse the award of compensation and attorney fees to COT.
Lastly, DOTD disputes the trial court's award of the full amount of fees claimed by COT's expert appraiser, James A. Young. DOTD complains that the award of $27,400 improperly includes a charge of $13,350 for work done by one of Mr. Young's associates. Young's bill indicates that this charge is due for 133.5 hours of work at $100 per hour. DOTD believes this amount should not have been awarded because the associate, Mr. Sholar, was not qualified in court as an expert and did not testify at trial. However, the record does not show that DOTD contested the fees claimed before the trial court.
The trial court may render any judgment for costs that it considers equitable. La. C.C.P. art. 1920. The assessment of costs may not be reversed unless an abuse of discretion is shown. City of Shreveport v. Noel Estate, Inc., 41,148 (La.App. 2d Cir.9/27/06), 941 So.2d 66, writ denied, 2006-2774 (La.1/26/07), 948 So.2d 171. An expert witness is entitled to reasonable compensation for his court appearance and preparatory work. Id.
We note that Young's invoice includes charges for two days in court. However, only one day was required for trial. We find that the expert fees awarded should be reduced by $1,800, the amount charged for one day. Otherwise, DOTD has not shown that the trial court abused its discretion in awarding the expert fees *771 claimed by Young, inclusive of work done on the matter by one of Mr. Young's associates in his business.

CONCLUSION
For the reasons explained in this opinion, we affirm the trial court's judgment awarding additional compensation to Cole Oil and Tire Company, Inc. The award of attorney fees is also affirmed, but the award of expert fees is amended to $25,600. Costs of the appeal in the amount of $120 are assessed against DOTD, and the matter is remanded to the trial court to set the amount of trial and record preparation costs. La. R.S. 13:5112.
AFFIRMED, WITH AMENDMENT OF EXPERT FEES. REMANDED TO TRIAL COURT FOR DETERMINATION OF COURT COSTS.